IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| BILLY JOE MAGWOOD | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:97cv629-MHT |
| CHARLIE E. JONES, WARDEN, | ) | (WO) |
| et al., | ) | |
| | ) | |
| Respondents. | ) | |


OPINION AND ORDER

This case presents, among other things, the
interesting question of whether and when the law-of-the-
case doctrine applies to separate federal habeas cases
arising of the same state criminal proceeding.

Petitioner Billy Joe Magwood brings this petition
under 28 U.S.C. § 2254 for a writ of habeas corpus
challenging his sentence of death, imposed at a 1986
resentencing hearing in Alabama state court for the 1979
murder of the Sheriff of Coffee County, Alabama.  This
court determined that the case should proceed in two

stages: in Stage I, the court would determine which claims had been procedurally defaulted and which non-defaulted claims warranted an evidentiary hearing; and in Stage II, the court would reach the merits of the non-defaulted claims.  The case is currently before the court on Magwood's objections to the magistrate judge's Stage I report and recommendation, which addressed which claims this court should consider on the merits).

In an order dated January 27, 2004, the court overruled Magwood's objections to the magistrate's recommendation, with one exception: the court would consider further argument about whether Magwood's claims under Brady v. Maryland, 373 U.S. 83 (1963), are barred by the doctrine of "law of the case."  Following additional briefing on whether the Brady claims are barred by 28 U.S.C. § 2244(b),[1] the court acknowledged

_____

1.  See Order (Doc. No. 73), dated February 20, 2004.

2

that "[w]hether this court is precluded from reviewing petitioner's <u>Brady</u> claims on the merits remains open."[2]

After careful consideration of the parties' briefs and the relevant case law, the court will overrule Magwood's objections and not allow the <u>Brady</u> claims to proceed to Stage II.

## I. BACKGROUND

### A.  1981 Conviction and Sentence

Magwood was convicted on June 2, 1981, for the capital murder of the Sheriff of Coffee County, which occurred on March 1, 1979.  Thereafter, he was sentenced to death by electrocution.  Following exhaustion of his remedies in the state-court system, Magwood filed a habeas petition under 28 U.S.C. § 2254 in the United States District Court for the Middle District of Alabama challenging his 1981 conviction and sentence ("Petition

---

2.  Order (Doc. No. 77), dated March 16, 2004.

I"). Petition I contained no claims for violations of Brady v. Maryland.

The district court denied Petition I as to Magwood's conviction, but found that he should be resentenced based on the sentencing court's failure to consider the following two circumstances as mitigating: (1) the capital felony was committed while Magwood was under the influence of extreme mental or emotion disturbance, and (2) the capacity of Magwood to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. Magwood v. Smith, 608 F.Supp. 218, 225 (M.D. Ala. 1985) (Hobbs, C.J.). The district court's decision was affirmed on appeal to the Eleventh Circuit Court of Appeals. Magwood v. Smith, 791 F. 2d 1438 (11th Cir. 1986).

B. 1986 Resentencing

A resentencing hearing was held in the Circuit Court of Coffee County, and Magwood was again sentenced to

4

death by electrocution. Following exhaustion of his
remedies in the state-court system, Magwood
simultaneously filed two petitions in federal court on
April 23, 1997. He submitted a request for permission to
file a second habeas petition challenging his 1981
judgment of conviction to the Eleventh Circuit ("Petition
II"). He also filed a habeas petition under 28 U.S.C.
§ 2254 in this court seeking relief from his 1986
resentence ("Petition III"), which is now before this
court. Both petitions contained Brady claims. Petition
II alleged that the State suppressed evidence favorable
to Magwood during the 1981 trial and sentencing, and
Petition III alleged that the State suppressed the same
evidence at the 1986 resentencing. The Eleventh Circuit
denied Petition II after concluding that Magwood's Brady
claims were barred by 28 U.S.C. § 2244(b)(2), in part
because Magwood failed to "state a constitutional error"
under Brady. In re Magwood, 113 F.3d 1544, 1548-49 (11th
Cir. 1997).

### C.  <u>Brady</u> Claims

Because the precise nature of the <u>Brady</u> claims is crucial to this court's determination of whether to review them on the merits, the court will set them out at some length.

### 1. The <u>Brady</u> claims in Petition III

Magwood alleges that "the prosecution withheld important evidence of the manifestations of [his] mental disease which created at least a reasonable probability of reaching a different result at petitioner's resentencing."[3]  He contends that the resentencing court would not have relied on the jury's finding that Magwood was not mentally ill at the time the offense occurred if this evidence had been available.[4]  The alleged <u>Brady</u> evidence falls into two categories.

--------

3.   Petition (Doc. No. 1), at ¶ 63.

4.   <u>Id</u>., at ¶¶ 27, 63.

6

First, Magwood alleges that the State suppressed prison and parole records that demonstrate "that [his] insanity had manifested itself prior to the offense."[5] Specifically, he contends the State suppressed (1) a transcript of a July 27, 1976, probation revocation hearing in which the judge stated he was revoking probation because of Magwood's poor mental condition; (2) a September 1978 report by Sheriff Doug Whittle of Geneva County recommending against parole because of Magwood's mental illness; (3) an internal report prepared by William Chesser of the Alabama Board of Pardons and Paroles on September 25, 1978, calling Magwood "mentally ill" and "disoriented;" and (4) a September 20, 1978,

_____

5.  Id., at ¶¶ 67-77.  In ¶ 65 of his petition, Magwood refers to "statements by a judge, Mr. Magwood's probation officer, and a sheriff to the effect that Mr. Magwood's mental illness was severe and florid."  He then references documents "A83-151."  Petition, at ¶ 65. Magwood then discusses, in ¶¶ 69 to 77, statements by a judge, probation officer and sheriff to the effect that his mental illness was severe.  The documents referenced fall in between A83 and A151.  It can therefore be assumed that ¶ 65 and ¶¶ 69-77 refer to the same evidence.

memo from Al Smith, Magwood's probation officer, about Magwood's attempted escape that calls attention to Magwood's mental instability.

Second, Magwood claims that the State suppressed the pretrial statements of Drs. Crook and Cooper, made at a sanity hearing held three months after his arrest, wherein they "deemed themselves wholly unable to assess petitioner's mental state." Magwood alleges that the court at resentencing relied upon the record at trial "insofar as it supported the jury's rejection of petitioner's insanity defense," and the record reflects that the jury rejected Magwood's insanity defense, at least in part, due to the testimony of Drs. Crook and Cooper at trial that Magwood was <u>not</u> insane, which conflicted with their earlier acknowledgment that they were unable to assess Magwood's sanity.[6]

---

6. Petition, ¶¶ 78-88.

## 2. The Brady claims in Petition II

In Petition II, Magwood claimed the State suppressed the same evidence of his preexisting mental disorder during the 1981 trial and sentencing, and he sought permission from the Eleventh Circuit to file a second petition challenging his conviction on this ground.  In In re Magwood, 113 F.3d 1544 (11th Cir. 1997), the Eleventh Circuit concluded that 28 U.S.C. § 2244(b)(2)(B) prohibited Magwood from raising the Brady claims in a second habeas petition challenging his 1981 conviction.

With respect to the prison and parole records indicating that the State knew Magwood was insane prior to the offense, the court found that Magwood made no showing why documents, which were in the possession of the Alabama Board of Pardons and Paroles and were produced pursuant to a 1991 discovery order, could not have been located prior to Petition I using these same procedures.  Thus, the court concluded that Magwood had failed to exercise the due diligence required by

9

§ 2244(b)(2)(B)(i).   Id. at 1549.   The court further concluded that Magwood had failed to demonstrate "constitutional error" required by § 2244(b)(2)(B)(ii). According to the Eleventh Circuit, Magwood's Brady claims failed because he could not demonstrate that the State "suppress[ed] the documents, which could have been requested by either party at any time."   Id. Furthermore, because he was present during the parole revocation, the transcript of that hearing could not have been suppressed.   Id.  The appellate court also concluded that Magwood had failed to establish by "clear and convincing evidence that admission of the documents would have prevented a reasonable factfinder from convicting him of the underlying offense" as required by § 2244(b)(2)(B)(ii).   Id.

With respect to the pretrial statements of Drs. Crook and Cooper, the appellate court concluded that Magwood had failed to meet § 2244(b)(2)(B)(i) because he and one of his counsel were present at the pretrial sanity

10

hearing where these doctors testified. Therefore, Magwood could not demonstrate that the pretrial statements "could not have been discovered previously through the exercise of due diligence." Id. at 1548. The court further concluded that Magwood had failed to demonstrate "constitutional error" required by § 2244(b)(2)(B)(ii) because he could not demonstrate "that the State suppressed pretrial statements made in his presence and that of his attorneys." Id.

## II. DISCUSSION

There are two separate reasons why Magwood's Brady claims might fail. First, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), second or successive habeas petitions are allowed only in limited circumstances. Magwood already filed Petition I in 1981; if Petition III is considered a second or successive petition, Magwood can pursue his Brady claims only if he meets the requirements of the AEDPA. Second,

11

in In re Magwood, the Eleventh Circuit already ruled that

the Brady claims in Petition II, which were based on the

same allegedly suppressed evidence as the Brady claims

contained in Petition III, are without merit (that is,

that Magwood cannot state a constitutional violation).

Because this court is bound to follow decisions of the

Eleventh Circuit, this court may be precluded from even

considering an argument that calls the circuit court's

decision into question.


### A. Second or Successive Petition

The AEDPA bars claims "presented in a second or

successive habeas corpus application," except in very

limited circumstances.  28 U.S.C. § 2244(b)(2).  Because

the answer to precisely what constitutes a second or

successive petition is not clarified in the AEDPA, courts

must often interpret the statute to see if a specific

claim is second or successive.   See, e.g., Walker v.

Crosby, 341 F.3d 1240, 1245 n.4 (11th Cir. 2003) (noting

that whether and to what extent § 2244(b) allows a petitioner, who filed one habeas application and is then resentenced, to bring another habeas application that, in part, challenges his resentencing was an open question). The court must therefore determine whether Magwood's Brady claims are barred as a second or successive habeas petition under 28 U.S.C. § 2244.

The court concludes that the claims are not second or successive. The Eleventh Circuit has concluded that, under the AEDPA, habeas petitions challenging the constitutionality of a resentencing proceeding are not second or successive to petitions that challenge the underlying conviction and original sentence. In In re Green, 215 F.3d 1196 (11th Cir. 2000) (per curiam), Green was tried and convicted of numerous offenses, including a gun offense. When Green filed a habeas petition challenging his conviction, the court granted the petition with respect only to the gun crime. Because Green's original sentence had been based, in part, on the

13

gun crime, the trial court held a resentencing hearing.
Green filed a second habeas petition alleging that
counsel rendered ineffective assistance at this
resentencing.   The court held that this second § 2255
petition was not second or successive under the AEDPA
"[b]ecause Green attack[ed] the constitutionality of his
re-sentencing hearing only, and not the validity of his
conviction."   Id.

     As support for its holding, the court cited Walker v.
Roth, 133 F.3d 454 (7th Cir. 1997).   In Walker, the
district court granted Walker's first petition after
finding that the State had violated his due process
rights at sentencing.   Id.   Walker then filed a petition
challenging various aspects of the resentencing hearing.
The court stated,

> "The claims Walker seeks to bring in his
> new petition challenge aspects of his
> resentencing; he does not present any
> claims challenging his conviction. None
> of these new claims were raised in his
> first petition, nor could they have
> been; Walker is attempting to challenge
> the constitutionality of a proceeding

14

> which obviously occurred after he filed,
> and obtained relief, in his first habeas
> petition.   Therefore,  although  Walker
> had filed an earlier habeas petition in
> 1988, the petition that he now wishes to
> file cannot be considered a second or
> successive petition to the earlier one
> for  purposes  of  § 2244  because  it
> constitutes   Walker's    first   federal
> challenge   to   the   proceedings   that
> resulted in his current state custody.
> We hold that a second habeas petition
> attacking  for  the  first  time  the
> constitutionality  of  a  newly  imposed
> sentence is not a second or successive
> petition within the meaning of § 2244."

Id. at 455.

Magwood's case is nearly identical to Green and Walker.  As in Green and Walker, Magwood's first habeas petition, Petition I, left his conviction intact, but resulted in a resentencing hearing.  Magwood filed another petition, Petition III, alleging constitutional error at his resentencing, including the suppression of parole records.  Although the State suppressed the same evidence at his trial, the suppression at resentencing was an independent constitutional error that originated at the resentencing proceedings.  Like the petitioners in

15

<u>Green</u> and <u>Walker</u>, Magwood could not challenge the suppression of evidence at his resentencing in Petition I because he had not been resentenced when he filed that petition.[7] Therefore, the court concludes, as it must in light of <u>Green</u> and <u>Walker</u>, that this petition is not second or successive under § 2244.[8]

––––––––––––––––––

7. The court recognizes that Magwood raised <u>Brady</u> claims, while Green raised an ineffective-assistance-of-counsel claim.  Nothing in <u>Green</u>, however, suggests that this distinction should alter the outcome.

8. The Eleventh Circuit has reached the same conclusion on several other occasions.  See <u>e.g.</u>, <u>Walker v. Crosby</u>, 341 F.3d 1240, 1245 n.4 (11th Cir. 2003) (noting that in 'mixed petitions,' in which some claims challenge a conviction while others challenge the resentencing, the claims challenging the resentencing are not second or successive); <u>McIver v. United States</u>, 307 F.3d 1327, 1330 (11th Cir. 2002) (holding that a motion under § 2255 is not second or successive when an earlier § 2255 motion was granted to afford the petitioner the opportunity to file a direct appeal); <u>Hepurn v. Moore</u>, 215 F.3d 1208 (11th Cir. 2000) ("Every circuit that has addressed [the impact of resentencing on whether a petition is considered second or successive under the AEDPA] has agreed that, under the AEDPA, when new claims originate at resentencing, those claims may be brought in a subsequent habeas petition without the necessity of obtaining permission from the circuit court before filing the petition.").

## B. Preclusion of Magwood's Claims

### 1.

The doctrine of the law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983).  Under this doctrine, "an appellate decision on an issue must be followed in all subsequent trial court proceedings unless ... an intervening change in the controlling law dictates a different result." <u>Ad-Vantage Tel. Directory Consultants v. GTE Directories Corp.</u>, 943 F.2d 1511, 1520 (11th Cir. 1991) (citing <u>Piambino v. Bailey</u>, 757 F.2d 1112 (11th Cir. 1985)).  The rule promotes finality, efficiency, and stability in the judicial process by ensuring that "the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages."  18 Moore's Federal Practice § 134.20[1]-[2] (3d ed. 2006).

For the doctrine to apply, the circuit court must

17

have previously decided an issue in the "case" that is before the district court.  This inquiry is generally straight-forward because, usually, a "case" is either pending before a district court (possibly on remand from the court of appeals, but before the district court nonetheless) or pending before an appellate court on an appeal taken from a decision by the district court. Generally, once an appeal is taken, the case will not be before the district court unless the district court's decision is reversed and remanded.[9]  Thus, determining if an appellate ruling is part of a case before a district court is typically a linear and chronological inquiry.

This is not always so, however, for federal habeas petitions challenging state convictions.  Such habeas petitions are different from federal criminal cases and

---

9. Although certain issues may be appealed when other aspects of the case are pending before the district court, e.g., 28 U.S.C. § 1292(a)(2), any decision made in that appeal is easily traced back to the case pending before the district court.  If the appellate court reverses and remands on that issue, the matter on remand will be merged back into the rest of the "case" that is still pending before the district court.

18

most federal civil cases because they are best thought of as dialogues between the federal district court and the state-criminal-trial court.  A state-trial court enters judgment, and the federal habeas court reviews the constitutionality of the judgment, sometimes requiring certain procedures to be repeated to correct constitutional errors.

In some federal habeas cases, the applicability of the law-of-the-case doctrine will be clear.  For example, if a federal district court's ruling on a habeas issue is reversed and remanded, the district court must follow the mandate of the appellate court on remand.  But the doctrine's applicability can become more complicated in cases such as the one at bar, where the case goes from the federal district court, to the appellate court, and then to a state-trial court that must resentence or retry the petitioner.  Is a subsequent federal habeas petition challenging the resentencing the same "case" as the federal petition that challenged the original conviction

**19**

and sentence and was ultimately appealed to the circuit court?  If the petitioner receives federal habeas relief as to his sentence only and is then resentenced in state court, is a renewed federal habeas challenge to his original conviction the same "case" as a parallel federal habeas challenge to his resentencing?

This court has not identified a single case that directly answers these questions and considers the role of the law-of-the-case doctrine in federal habeas proceedings with such complicated procedural histories. One line of Supreme Court cases, however, seems to accept at least implicitly that a criminal trial, conviction, and sentence and all habeas challenges arising from that conviction are part of the same case. Sanders v. United States, 373 U.S. 1 (1963), and Kaufman v. United States, 394 U.S. 217 (1969), read together, stand for the proposition that a defendant is not precluded from filing a federal habeas petition challenging his conviction even though the argument advanced in the habeas petition was

20

rejected on direct appeal or in a prior habeas petition,
as long as there was an intervening change in law between
the habeas petition and the direct appeal or prior habeas
challenge.  <u>Kaufman</u>, 394 U.S. at 230; <u>Sanders</u>, 373 U.S.
at 17.

Although neither case specifically referenced the
doctrine of law of the case, in <u>Davis v. United States</u>,
417 U.S. 333, 342 (1974), the Supreme Court subsequently
reversed an appellate court that had used the law-of-the-
case doctrine to bar a habeas challenge on grounds that
it had previously rejected on direct appeal.  After
noting that the circuit law had changed in a way
favorable to the defendant in the interim between his
appeal and his habeas petition, the Supreme Court cited
<u>Sanders</u> and <u>Kaufman</u> as grounds for rejecting the circuit
court's conclusion that the law-of-the-case doctrine
prevented it from revisiting the argument. <u>Id</u>.

Thus, the Court in <u>Davis</u> seems to have accepted that
law of the case would have barred the argument advanced

in the habeas petition but-for the intervening change in law. Although the substantive legal holdings of these cases have been effectively overruled by Congress's passage of the AEDPA, the implicit assumption that a trial and any related habeas challenges are part of the same case remains undisturbed.

This court is also persuaded that all federal habeas proceedings arising from the same state conviction should be considered part of the same case because all such habeas proceedings arise from one case in the criminal trial court. Although each habeas petition may receive a separate case number in the reviewing federal district court (or may be consolidated for administrative efficiency), they all challenge the constitutionality of the criminal trial, conviction, and sentence, which are undoubtedly one case.

Here, Magwood was convicted and sentenced in state court, but this court vacated his death sentence. In Petition II and Petition III, Magwood is contending that

the same <u>Brady</u> evidence calls into question both his conviction and his subsequent resentencing.  In each petition, he is challenging the validity of the proceedings in one case in state court.  Put another way, all three of his habeas petitions go to the ultimate question of whether the State violated his constitutional rights during his capital prosecution, and all three are properly considered part of the same case.

In sum, this court concludes that all federal habeas challenges arising from a state-criminal trial, regardless of whether the defendant was resentenced as a result of a successful habeas challenge, are part of the same "case" for purposes of the application of the law-of-the-case doctrine.  Accordingly, the Eleventh Circuit's conclusion that the <u>Brady</u> claims in Petition II lacked merit are the law of the case and govern this court's analysis of the <u>Brady</u> claims in Petition III, unless some exception to that doctrine is present.

Magwood nonetheless advances four reasons why he should not be precluded by the Eleventh Circuit's ruling in Petition II from pursuing his <u>Brady</u> claims in Petition III.  First, he argues that he is challenging the 1986 resentencing on grounds different from those advanced against the 1981 conviction.  This argument is without merit.  The <u>Brady</u> evidence here is identical to the evidence considered by the Eleventh Circuit in <u>In re Magwood</u>, namely the pretrial statements of doctors Crook and Cooper and the prison and parole records.  Thus, the Eleventh Circuit analyzed the alleged suppression of the same evidence presented here.

Next, Magwood suggests that the Eleventh Circuit's discussion of the <u>Brady</u> claims' merits was dictum. Although the law-of-the-case doctrine does not apply to dicta, 18 Moore's Federal Practice § 134.53[2] (3d ed. 2006), the Eleventh Circuit's discussion of the <u>Brady</u> claims was not mere dictum.  Instead, Magwood's failure to allege a valid <u>Brady</u> violation was an independent

basis for the court's denial of his petition.  See In re Magwood, 113 F.3d at 1548 ("Even if Petitioner were able to show that he could not have discovered these statements through the exercise of due diligence prior to the filing of his original petition, his claim would still fail because the facts alleged do not state a constitutional error as required by § 2244(b)(2)(B)(ii).").

Magwood also asserts that the law-of-the-case doctrine does not apply because the circuit court applied a more exacting legal standard to the Brady claims in Petition II than the Brady claims in Petition III would receive.[10]  Simply put, in In re Magwood, the level of scrutiny did not influence the Eleventh Circuit's

_____

10. The Eleventh Circuit evaluated Petition II under 28 U.S.C. § 2244(b)(2)(B).  In re Magwood, 113 F.3d at 1547.  Magwood argues that the § 2244 standard does not apply to the Brady claims in Petition III because it is not second or successive.  According to Magwood, because the less-stringent standard of "reasonable probability" applies here instead of the "clear and convincing evidence" standard contained in § 2244, his claims should be considered on the merits.

25

conclusion that Magwood could not state a constitutional violation under <u>Brady</u>.  Rather, the circuit court independently evaluated those claims and concluded that under <u>Brady</u> itself the claims failed because the evidence in question had not been "suppressed" by the State.  <u>Id</u>. at 1548-49.

Finally, Magwood claims that the Supreme Court's decision in <u>Banks v. Dretke</u>, 540 U.S. 668 (2004), undermines the Eleventh Circuit's conclusion in <u>In re Magwood</u> that the <u>Brady</u> evidence was not suppressed.  To the extent the Eleventh Circuit's analysis conflicts with subsequent Supreme Court precedent, Magwood argues, this court should not follow the Eleventh Circuit's conclusion.  The premise of Magwood's argument is sound: if <u>Banks</u> (or other Supreme Court cases) expressly rejected the rationale in <u>In re Magwood</u>, the doctrine of the law of the case does not bind this court to accept the Eleventh Circuit's conclusions.  <u>See</u> 18 Moore's Federal Practice § 134.21[4][b] (3d ed. 2006) ("When, in

the interim between the [first and second decision in the case], a higher court to which the court owes obedience issues an opinion directly on point and irreconcilable with the earlier decision, the court is to disregard the law of the case and is to apply the new precedent."). Magwood is therefore invoking a recognized exception to the law-of-the-case doctrine.

In <u>Banks</u>, the Supreme Court observed that "defendants [need not] scavenge for hints of undisclosed <u>Brady</u> material when the prosecution represents that all such material has been disclosed."   540 U.S. at 695.   If a prosecutor makes arguments at trial suggesting that such evidence did not exist, the defendant is entitled to treat such statements as truthful.   <u>Id</u>. at 698.   The <u>Banks</u> Court expressly rejected the notion that, simply because defendants could conceivably discover exculpatory evidence through independent investigation, the prosecution does not violate <u>Brady</u> by suppressing such

**27**

evidence when it has made arguments at trial suggesting that such evidence did not exist.  <u>Id</u>. at 695, 698.

<u>Banks</u> does not undermine, let alone conflict with, the Eleventh Circuit's conclusion regarding the pretrial statements of Drs. Crook and Cooper.  The Eleventh Circuit concluded that this evidence was not suppressed because Magwood was aware of its existence at the time of trial.  <u>In re Magwood</u>, 113 F.3d at 1548-49.  In reaching this conclusion, the court relied on <u>Felker v. Thomas</u>, 52 F.3d 907 (11th Cir. 1995), which held that "there is no suppression, and thus no <u>Brady</u> violation, if either the defendant or his attorney knows before trial of the allegedly exculpatory information."  <u>Id</u>. at 910.  <u>Felker</u> is entirely consistent with <u>Strickler</u>.  Because Magwood attended the hearing, he heard the statements of Drs. Crook and Cooper.  Therefore, he was aware of the factual basis of the <u>Brady</u> evidence.  <u>Banks</u> in no way affects this conclusion.  Accordingly, the court finds that the

Brady claim regarding the testimony of Drs. Crook and Cooper is barred by the law of the case.

Likewise, Magwood's Brady claim regarding the parole revocation transcript is barred by the law of the case. The Eleventh Circuit concluded that this evidence was not suppressed because Magwood was present at this hearing, In re Magwood, 113 F.3d at 1549 (citing Felker, 52 F.3d at 910), and this conclusion is entirely consistent with Banks and Strickler.

The parole and prison files are a more difficult matter. Nothing in the record suggests that these records were referenced or otherwise made available to Magwood during his parole revocation hearing. In fact, the report by William Chesser, the report by Sheriff Whittle, and the memo by Al Smith post-date the 1976 parole revocation hearing. As stated, however, the Eleventh Circuit found that Magwood made no showing why documents, which were in the possession of the Alabama Board of Pardons and Paroles and were produced pursuant

29

to a 1991 discovery order, could not have been located
prior to Petition I using these same procedures.  In re
Magwood, 113 F.3d at 1549.  The critical question, then,
is whether Banks "dictates a different result,"
Ad-Vantage Tel. Directory Consultants, 943 F.2d at 1520
(emphasis added), from that reached by the Eleventh
Circuit in In re Magwood.  This court cannot say that it
does.

     As stated, in Banks, the Supreme Court observed that
"defendants [need not] scavenge for hints of undisclosed
Brady material when the prosecution represents that all
such material has been disclosed," 540 U.S. at 695; thus,
if a prosecutor makes arguments at trial suggesting that
such evidence did not exist, the defendant is entitled to
treat such statements as truthful.  Id. at 698.  Here, at
the state trial, the prosecutor argued that Magwood's
mental illness was not the cause of the offense because
his mental illness did not exist in a severe form prior

to the murder.[11]  At resentencing, the State resubmitted
the evidence from the trial and sentencing,[12] and the
state court based its imposition of the death penalty on
the evidence from the original record of the trial and
sentencing hearing.[13]  The question then is, Are the
State's actions here unequivocally covered by Banks?
While a reasonable argument could be made that they are,
this court cannot say that they are unequivocally, such
that it could be said that Banks dictates a result
different from that reached by the Eleventh Circuit.  It
is, at best, debatable whether the State made arguments
at trial suggesting that the records at issue did not
exist, such that Magwood was not obligated to engage in
any further inquiry.  Because Banks, at best, only
undermines the Eleventh Circuit's application of Brady to

_____

        11. Transcript of Trial held June 1, 1981, at 309-
310; Transcript of Sentencing held June 9, 1981, at 364.

        12. Transcript of Resentencing Hearing held September
16, 1986, at R-3.

        13. Transcript of Resentencing held October 2, 1986,
at R-25.

the records at issue, the law of the case applies, and
this court cannot vary from the Eleventh Circuit's
result.

2.

The question of preclusion could also be approached
through the lens of the doctrine of stare decisis.  As "a
fundamental feature of the American common law system of
adjudication," stare decisis "compels lower courts to
follow the decisions of higher courts on questions of
law."  18 Moore's Federal Practice § 134.01 (3d ed.
2006).  Under stare decisis, if a circuit court has
conclusively ruled on a question of law, a district court
whose decisions are subject to review by that circuit
court, may not consider arguments by a litigant that
would require the district court to ignore, or rule in a
manner that would undermine, the circuit court's prior
ruling.  <u>McGinley v. Houston</u>, 361 F.3d 1328, 1329-32
(11th Cir. 2004).  By allowing a <u>Brady</u> claim based on the

parole records, the court would certainly be undermining the Eleventh Circuit's ruling that Magwood could not prove a <u>Brady</u> violation.

However, the law-of-the-case exception invoked by Magwood also applies, in essence, to stare decisis. <u>See</u> 18 Moore's Federal Practice § 134.02[1][c] (3d ed. 2006). The question again, therefore, is whether <u>Banks</u> not merely undermines the Eleventh Circuit's conclusion, but dictates a different result here.  The mere weakening by the Supreme Court of a prior Eleventh Circuit panel decision is insufficient to permit a later circuit panel, and by extension the trial courts within the circuit, to refrain from following the prior decision.  <u>Florida League of Professional Lobbyists, Inc. v. Meggs</u>, 87 F.3d 457, 462 (11th Cir.) (Circuit courts are "not at liberty to disregard binding case law that is so closely on point and has only been weakened."), <u>cert. denied</u>, 519 U.S. 1010 (1996); <u>United States v. Smith</u>, 122 F.3d 1355, 1359 (11th Cir. 1997) ("[E]ven where it has been weakened, but

not overruled, by a Supreme Court decision, prior panel precedent must be followed."), cert. denied, 522 U.S. 1021 (1997).  While Banks may have weakened the key rationale in In re Magwood for rejecting the Brady claims arising from the parole records, the doctrine of stare decisis still binds this court to accept the Eleventh Circuit's conclusions on that point.


### 3.

Magwood finally argues that, even if the law of the case and stare decisis require this court to conclude that his Brady claims are meritless, the court should not do so until Stage II.  The court, however, sees no reason to delay the inevitable.  Whether by procedural default or some other grounds of preclusion, Stage I was intended to winnow the claims in Magwood's habeas petition down to those with potential merit.

In sum, guided by the doctrine of the law of the case, the court concludes that Magwood's <u>Brady</u> claims lack merit.


## III. CONCLUSION

For the reasons stated above, it is ORDERED  that petitioner Billy Joe Magwood Magwood's objections, that the court improperly disallowed his <u>Brady</u> claims to proceed to Stage II, are overruled.

DONE, this the 2nd day of February, 2007.


                                    /s/ Myron H. Thompson
                            UNITED STATES DISTRICT JUDGE