IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

BILLY JOE MAGWOOD        )
                              )
    Petitioner,       )
                              )
    v.                  )     CIVIL ACTION NO.
                              )     2:97cv629-MHT
GRANTT CULLIVER, WARDEN,   )       (WO)
et al.,                  )
                              )
    Respondents.      )

OPINION

This case is before the court on petitioner Billy Joe Magwood's third habeas petition, in which he challenges his 1986 death sentence on the grounds that it violates the Sixth Amendment, the Eighth Amendment, and the Fourteenth Amendment, as well as this court's 1985 conditional grant of habeas corpus. Specifically, Magwood argues that the Alabama courts failed to conduct a proper proportionality review of his sentence; that the Alabama courts relied on arbitrary and non-statutory aggravating factors in finding that a death sentence was appropriate; that his mental illness rendered him

ineligible for the death penalty; that his sentence violates the fair-warning principle of due process; that the state sentencing court's findings at his 1986 resentencing were inconsistent with this court's 1985 conditional grant of habeas corpus; that a jury should have been empaneled at his 1986 resentencing; that his counsel was unconstitutionally ineffective; and, finally, that he was involuntarily medicated in violation of due process. For the reasons that follow, the petition will be granted as to Magwood's fair-warning claim and the aspect of the ineffective-assistance claim that flows from it, and the petition will be denied as to all other aspects.

## I. STANDARD OF REVIEW

The standard of review in this case is governed the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA provides that, where claims were originally adjudicated in state court, relief on claims

included in an application for a writ of habeas corpus can be granted only under two circumstances.  First, as to matters of law, relief may be granted only where the state-court adjudication resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law, as that law is set forth by the United States Supreme Court.  28 U.S.C. § 2254(d)(1). Second, as to matters of fact, relief may be granted only where the state court's determination of the facts was unreasonable in light of the evidence presented to the state court.  28 U.S.C. § 2254(d)(2).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court held that a decision is "contrary to" clearly established federal law if the state court has arrived at a conclusion opposite one reached by the United States Supreme Court on a question of law, or if the state court has decided a case differently from the way the United States Supreme Court has on materially indistinguishable facts.  529 U.S. at 405.  An

3

"unreasonable application" of that law occurs where the state court identifies the correct legal standard from the United States Supreme Court's cases, but unreasonably applies it; an "unreasonable application" also occurs where a state court unreasonably extends, or refuses to extend, a legal principle from those cases.  Id. at 407.

## II. BACKGROUND

### A. Conviction and First Habeas Petition

Magwood was convicted on June 2, 1981, for the capital murder of the Sheriff of Coffee County, Alabama, C. F. "Neil" Grantham, which occurred on March 1, 1979. Thereafter, he was sentenced to death by electrocution. Following exhaustion of his remedies in state court, Magwood filed a federal-habeas petition in this court under 28 U.S.C. § 2254 challenging his conviction and sentence.  This court denied the petition as to Magwood's conviction, but found that he should be resentenced based on the sentencing court's failure to find the existence

of the following two statutory mitigating circumstances:
(1) the capital felony was committed while Magwood was
under the influence of extreme mental or emotional
disturbance, and (2) Magwood's capacity to appreciate the
criminality of his conduct or to conform his conduct to
the requirements of law was substantially impaired.
Magwood v. Smith, 608 F.Supp. 218, 225 (M.D. Ala. 1985)
(Hobbs, C.J.), aff'd, 791 F.2d 1438 (11th Cir. 1986).

According to this court, the state trial court's
failure to find the existence of these mitigating
circumstances was clearly erroneous in light of the
overwhelming evidence regarding Magwood's mental
condition at the time of the offense. Id. at 226. This
court noted that the State's only evidence that Magwood
was sane came from two general practitioners who examined
Magwood for 15 and 30 minutes, respectively, and a
clinical psychologist who conceded that Magwood suffered
from paranoid schizophrenia and that he examined Magwood
two years after the offense conduct and while he was

strongly medicated.  Id.  By contrast, the unanimous opinion of the three physicians on the Lunacy Commission appointed by the trial court to examine Magwood was that Magwood was insane at the time of his admission to their hospital, at the time they issued their report, and probably at the time of the commission of the offense. Id.  According to one psychiatrist on the commission, "Billy Joe Magwood falls into the category that would be called crazy in Stockholm; he would be called crazy in Calcutta, in Tokyo, any place.  He is a schizophrenic. He is not in the borderline category."  Id.

This court acknowledged that the jury's conclusion in the guilt phase of the trial that Magwood was not legally insane was due deference by the federal courts. "Accordingly, while in this Court's opinion the evidence seems particularly strong that petitioner was insane at the time of the offense, this issue is properly left to the state courts.  The matter of the existence of mitigating circumstances, however, is an altogether

different matter." Id. at 227.  Because the state court committed clear error in not finding the mitigating circumstances related to Magwood's mental state, this court granted habeas relief conditional upon a resentencing in which the mitigating circumstances are found to exist and considered in determining whether Magwood should receive a sentence of death or life without parole.

### B.  1986 Resentencing

In 1986, the state trial court conducted a "complete and new" sentencing hearing, including "a new assessment of all of the evidence, arguments of counsel, and law" and a "new ... opportunity for the parties to submit evidence." Sent. Tr., R. Tab 1, at R-25.  The sentencing judge found that the mitigating factors found by this court were present, but that Magwood was not legally insane at the time of the crime and that his mental defect was not the sole cause of the murder.  Id. at R-

7

26.   The court also found that Magwood knew right from wrong, and had the ability to refrain from killing the sheriff.   Id.   The trial court further found one aggravating factor: that Magwood killed a law enforcement officer because of official job-related acts.   Id. at R-25.   Magwood's attorney at resentencing, J. L. Chestnut, Jr., stated the aggravating factor existed, submitting it in Magwood's proposed findings.   Id. at R-17.   After weighing the mitigating and aggravating circumstances as it found them, the sentencing court again sentenced Magwood to death by electrocution.   Id. at R-28 to R-29.

The Alabama Court of Criminal Appeals affirmed the trial court, Magwood v. State, 548 So. 2d 512 (Ala. Cr. App. 1988), and the Alabama Supreme Court, in turn, affirmed that decision, Ex Parte Magwood, 548 So. 2d 516 (Ala. 1988).   The United States Supreme Court denied a petition for a writ of certiorari.   Magwood v. Alabama, 493 U.S. 923 (1989).   Magwood then filed for post-conviction relief under Alabama's former Criminal

8

Procedure Temporary Rule 20 (now Ala. R. Crim. P. 32). His petition was denied by the trial court and by the Alabama Court of Criminal Appeals.  Magwood v. State, 689 So.2d 959 (Ala. Cr. App. 1996).

Magwood then simultaneously filed two petitions in federal courts.  First, he submitted a request for permission to file a second habeas petition challenging the 1981 judgment of conviction to the Eleventh Circuit Court of Appeals.  The Eleventh Circuit denied this second petition.  In Re Magwood, 113 F.3d 1544 (11th Cir. 1997). Second, he filed a habeas petition under 28 U.S.C. § 2254 in this court seeking relief from his 1986 sentence.  This third petition is the subject of this opinion.


### C. Procedural Posture of this Petition

This court split the proceedings on the current petition into two stages: Stage I (determining whether the claims were procedurally defaulted) and Stage II

9

(considering the merits of the claims that were not procedurally defaulted). Having found at Stage I that some claims were procedurally defaulted, ___ F.Supp. 2d ___, 2007 WL 325270 (M.D. Ala. 2007) (Thompson, J.), this court now goes on to consider the claims that are not defaulted.

### D. Alabama's Death-Penalty Scheme

In order to understand Magwood's claims, it is necessary to understand the development of Alabama's death-penalty scheme during the time period relevant here. There are essentially three eras of the Alabama death penalty during this period of time. See generally Colquitt, The Death Penalty Laws of Alabama, 33 Ala. L. Rev. 213 (1982). The first era involves the operation of Alabama's 1975 capital statute before the Alabama Supreme Court reinterpreted it in Beck v. State, 396 So.2d 645 (Ala. 1981), and Ex parte Kyzer, 399 So.2d 330 (Ala. 1981). Relevant parts of that statute, set forth in

10

Title 13, Chapter 11 of the former Alabama Code, are attached as an appendix to this opinion. Under the 1975 statute, a defendant was charged with one of 14 aggravated offenses enumerated in former 1975 Ala. Code § 13-11-2(a), including § 13-11-2(a)(5), "The murder of any ... sheriff ... or peace officer of any kind ... because of some official or job-related act or performance of such officer...." The jury's function was to determine whether the defendant was guilty of the charged offense. If the defendant was guilty, the jury was "to fix the punishment at death." Id. § 13-11-2(a). At that point, "[n]otwithstanding the fixing of the punishment at death by the jury," id. § 13-11-4, the trial judge took over sentencing "to determine whether or not the court will sentence the defendant to death or to life imprisonment without parole," id. § 13-11-3. Following a hearing, the court was required to weigh eight aggravating and seven mitigating circumstances, as enumerated in §§ 13-11-6 and -7, respectively. Id. § 13-

11

11-4. Then, "[i]f the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which shall at least include ... [o]ne or more of the aggravating circumstances enumerated in section 13-11-6, which it finds exists in the case and which it finds sufficient to support the sentence of death." Id. Therefore, under the 1975 statute, the trial judge was the final sentencing authority, Jacobs v. State, 361 So.2d 640, 644 (Ala. 1978), and a sentence of death was permitted only upon her finding that aggravating circumstances in § 13-11-6 outweighed mitigating circumstances in § 13-11-7.

The second era involved the operation of the 1975 statute after its interpretation by the Alabama Supreme Court in two decisions, Beck v. State and Ex parte Kyzer. Following a series of decisions by the United States Supreme Court, including but not limited to Beck v. Alabama, 447 U.S. 625 (1980), the Alabama Supreme Court

12

undertook an examination of the 1975 statute to ensure that it met constitutional standards.  In <u>Beck v. State</u>, 396 So.2d 645 (Ala. 1981) (on remand), rather than require the state legislature to re-write the statute to conform to constitutional requirements recently set out in decisions of the United States Supreme Court, the Alabama Supreme Court found that the Alabama legislature intended to write a constitutional statute, 396 So.2d at 660, and, accordingly, "exercise[d] its inherent power to formulate guidelines which the Supreme Court of the United States has judicially determined to be constitutionally required in death cases," <u>id</u>. at 648. These "guidelines" included the requirement, mandated by <u>Beck v. Alabama</u> itself, that the jury be permitted to consider lesser included offenses.  <u>Id</u>. at 658-59.  They also entailed a revised procedure that made the jury more involved in the sentencing phase of the case.  <u>Id</u>. at 662-63.  Under the procedures outlined in <u>Beck</u>, the trial would be 'trifurcated' into a guilt phase, an advisory

13

sentencing phase in which the jury was instructed on and required to weigh the aggravating and mitigating circumstances, and a final sentencing phase in which the judge was required to weigh the aggravating and mitigating circumstances.  Id.

Whereas Beck reformulated various procedures for capital cases, Ex parte Kyzer addressed the aggravating circumstances the trial court was permitted to consider when it determined whether to sentence a defendant to death or life imprisonment without parole.  In Kyzer, the Alabama Supreme Court posed the question of whether a defendant convicted of one of the 14 aggravated offenses enumerated in former 1975 Ala. Code § 13-11-2(a) could be sentenced to death without the trial court finding the existence of one of the eight enumerated aggravating circumstances in § 13-11-6.[1]  The court acknowledged that

---

1.  In fact, the real question in Kyzer was whether a new trial was required in light of Beck v. Alabama, 447 U.S. 625, and the Alabama Supreme Court answered this question in the affirmative.  The remainder of the opinion in Kyzer, including its discussion of the (continued...)

a "literal and technical reading of the statute" precluded a death sentence in the absence of any aggravating circumstance in § 13-11-6.  Kyzer, 399 So.2d at 337; see former 1975 Ala. Code § 13-11-4 ("If the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which shall at least include ... [o]ne or more of the aggravating circumstances enumerated in section 13-11-6, which it finds exists in the case and which it finds sufficient to support the sentence of death.").  However, and notwithstanding the language of the statute, the Alabama Supreme Court held that the legislature did not intend to limit the trial court's consideration of aggravating and mitigating circumstances to those enumerated in §§ 13-11-6 and -7.  Kyzer, 399 So.2d at 338.   Rather, the trial court could consider the

---

    1.  (...continued)
aggravating circumstances required for a sentence of death, is dictum.

15

aggravated <u>offense</u> enumerated in § 13-11-2 and averred in
the indictment as an aggravating circumstance for
sentencing purposes.   <u>Id</u>.   If the aggravation of the
offense itself outweighs any mitigating circumstances,
the court held, the trial judge could sentence the
defendant to death even in the absence of an aggravating
circumstance enumerated in § 13-11-6.   <u>Id</u>.

According to the Alabama Supreme Court, this
conclusion was required in order to resolve an "anomaly"
in the statute resulting from the fact that "there is a
corresponding aggravating circumstance for most, but not
all, of the aggravated offenses."   <u>Id</u>. at 334.   If the
jury found the defendant guilty of the aggravated offense
but the trial judge could not find the existence of an
aggravating circumstance, this "would be completely
illogical and would mean the legislature did a completely
useless act by creating a capital offense for which the
defendant could not ultimately receive the death
penalty."   <u>Id</u>. at 337.   Reasoning that it could "think of

16

no reason why the legislature would intend such a result," id., and that it could not "assume that the legislature did a useless act," id. at 338, the court held that, notwithstanding this "literal and technical reading of the statute," id. at 337, the legislature intended to permit the trial judge to consider the aggravated offense averred in the indictment as an aggravating circumstance sufficient to impose the death penalty.  Id. at 338.[2]

---

2. When the Beck decision was initially released, it apparently did not reflect the interpretation of the statute later announced in Kyzer.  Beck was initially issued on December 19, 1980, but it was modified and reissued on March 6, 1981, the same day the court issued its decision in Kyzer.  According to Judge Colquitt's law review article on the death-penalty laws of Alabama, the December 1980 version of Beck stated that "a finding by the jury that the defendant was guilty of committing the capital offense, along with a finding of one or more of the aggravating circumstances set out in 13-11-6, would be a sufficient finding which the jury could weigh in determining whether to impose the death penalty." Colquitt, supra, at 284-85 (quoting Beck v. State, No. 77-530 (original manuscript Dec. 19, 1980)). Subsequently, the Alabama Supreme Court modified its original opinion and issued the final version on March 6, 1981, the same day it decided Kyzer.  According to the final version of Beck, "the jury verdict that the
(continued...)

The third era of the Alabama death penalty began on July 1, 1981, when a new death-penalty statute took effect. The 1981 statute codified many of the changes made by the Alabama Supreme court in <u>Beck</u>. But it also rejected <u>Kyzer</u>'s rule on aggravating circumstances: "Unless at least one aggravating circumstance as defined in section 13A-5-49 exists, the sentence shall be life imprisonment without parole." 1975 Ala. Code § 13A-5-45(f). Therefore, under the 1981 statute, the trial court could not sentence a defendant to death based on a finding that the aggravated offense constituted the only aggravating circumstance.

---

2.   (...continued)
defendant was guilty of committing the capital offense would mean that the State had already established at least one aggravating circumstance, even though the legislature did not include an aggravating circumstance in § 13-11-6 to correspond with the 'aggravation' made a part of each capital offense by § 13-11-2(a)." <u>Beck</u>, 396 So.2d at 663. To the best of this court's knowledge, the original version of <u>Beck</u> as quoted in Judge Colquitt's law review article has not been made a part of the record in this case.

## III. DISCUSSION

This court now turns to the merits of Magwood's claims.

### A. Freakish, Arbitrary, and Disproportionate Imposition of the Death Penalty

Magwood claims that his death sentence was freakish, arbitrary, and disproportionate in violation of the Fourteenth Amendment's due process clause and the Eighth Amendment. Magwood points to three circumstances that violated his constitutional rights: (1) the state courts' failure to conduct adequate 'proportionality review' of his death sentence; (2) the sentencing court's reliance on "non-statutory and arbitrary factors" in imposing the death sentence; and (3) his mental illness, which he argues disqualified him from the death penalty.

## 1. Proportionality Review

Magwood claims that he was denied due process when the state appellate courts refused to vacate his death sentence under Alabama's requirement of 'proportionality review.'  In Beck v. State, 396 So.2d at 664, the Alabama Supreme Court held that, pursuant to the United States Supreme Court's decision in Gregg v. Georgia, 428 U.S. 153, 204-06 (1976), 'proportionality review' would be required in Alabama: "Each death sentence should be reviewed to ascertain ... whether similar crimes throughout the State are being punished capitally and whether the sentence of death is appropriate in relation to the particular defendant."  Beck, 396 So.2d at 664. Magwood claims that, in his case, the Alabama appellate courts failed in their obligation to review his sentence for proportionality.  He argues that, under Alabama law, the death penalty is never inflicted upon a person with an impaired mental condition such as his own and that no other capital defendant has been sentenced to death

20

without the existence of an aggravating circumstance enumerated in former 1975 Ala. Code § 13-11-6.

This court must reject Magwood's proportionality claim. Under the federal-habeas statute, this court entertains an application for a writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Proportionality review, however, is not required by the Constitution. Pulley v. Harris, 465 U.S. 37 (1984). In cases where state law requires proportionality review, federal-habeas courts should not review the substance of state courts' conclusions based on such review. Mills v. Singletary, 161 F.3d 1273, 1281-82 (11th Cir. 1998); Moore v. Balkcom, 716 F.2d 1511, 1518 (11th Cir. 1983).

It may be true that once state law requires proportionality review, as it does in Alabama, then the due process clause applies to the extent that the State cannot deny proportionality review without due process of

law.   See Foster v. Delo, 39 F.3d 873, 882 (8th Cir.
1994) (en banc); Banks v. Horn, 939 F.Supp. 1165, 1175
(M.D. Pa. 1996) (McClure, J.), vacated on other grounds,
126 F.3d 206 (3d Cir. 1997).   However, also consistent
with due-process principles, where the state court
undertakes proportionality review "in good faith" and
concludes that the proportionality principle was not
violated, the Constitution does not require the federal
court "to look behind that conclusion."   Walton v.
Arizona, 497 U.S. 639, 656 (1990), overruled on other
grounds by Ring v. Arizona, 536 U.S. 584 (2002).

      In this case, the Alabama Court of Criminal Appeals
conducted proportionality review as required by Beck.
Magwood v. State, 548 So.2d 512, 513 (Ala. Cr. App.
1988).   This court, having reviewed the state court's
opinion, sees nothing in the record to indicate a lack of
good faith in that court's proportionality review.
Accordingly, Magwood's proportionality claim at the

habeas stage must be rejected.

### 2. Consideration of "Non-Statutory" Aggravating Factors

Magwood argues that his sentence violates the Constitution because the state court exceeded its statutory authority, resulting in a sentence that is arbitrary. First, Magwood contends that Alabama state law, during the time period relevant here, authorized a sentence of death only where the sentencing authority found at least one circumstance listed in § 13-11-6 and that no such circumstance was found by Magwood's sentencing court. Second, Magwood contends that other "non-statutory" factors were unconstitutionally employed.

### a.

First, Magwood argues that the finding of an aggravated offense set forth in § 13-11-2 alone, without a finding of an aggravating circumstance listed in § 13-11-6, is insufficient as a matter of state law to

sentence him to death.  He contends that the sentencing court, by sentencing him to death in the absence of a finding of an aggravating circumstance found in § 13-11-6, ran afoul of the constitutional requirement that a capital sentencing be based on the application of "clear and objective standards" which "channel the sentencer's discretion."  Godfrey v. Georgia, 446 U.S. 420, 428 (1980) (internal citations omitted).  He thus relies on the United States Supreme Court's prohibition on the arbitrary imposition of the death penalty in support of his argument.  "Since Furman, [the capital sentencing] cases have insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action."  Maynard v. Cartwright, 486 U.S. 356, 363 (1988).

Magwood, in his briefs, assumes that the aggravating factor cited by the sentencing judge was non-statutory,

as his position is that only those aggravating circumstances listed in § 13-11-6 are statutory aggravating factors and argues that there are no objective standards, by definition, in a system in which the sentencing authority can employ a non-statutory aggravating factor.  In Magwood's view, the use of a factor that does not appear in § 13-11-6 as the sole aggravating factor is equivalent to the sole factor being impermissibly vague, see Godfrey, 446 U.S. 420; the imposition of the death penalty under such circumstances is unpredictable and therefore arbitrary and capricious.

As the above suggests, Magwood, throughout his brief, frames his argument as presenting the question whether a State may constitutionally sentence someone to death based on a single aggravating factor that is not found in the State's capital sentencing statute.  This is an open question, but it has been suggested that such a sentence might violate the Constitution.  See, e.g., Henry v. Wainwright, 721 F.2d 990, 994 (5th Cir. 1983).

25

However, this constitutional question is not before this court.  What is at stake here is not whether a non-statutory factor can, consistently with the Constitution, operate as an aggravating factor.  By claiming that his sentence was unconstitutional because it was based on a non-statutory factor, Magwood relies on an unsound assumption about what the statutory factors under state law are.  Alabama law, established by _Kyzer_, was that the aggravating factor found in Magwood's case--one of the aggravated offenses set forth in § 13-11-2--_is_ a statutory aggravating factor.  Moreover, this factor is found in the statute; at base, Magwood disputes merely the state court's holding that the legislature did not intend to require a finding of additional aggravating factor beyond the aggravated offense set forth in § 13-11-2.

As discussed above, the Alabama Supreme Court held in _Kyzer_ that, as a matter of Alabama law, a sentencing body need not find an aggravating circumstance set forth in

§ 13-11-6 in order to impose a sentence of death. Rather, a court need only find that the aggravated offense (set forth in § 13-11-2) was an aggravating factor in the crime. "Applying traditional rules of statutory construction," the Alabama Supreme Court found in <u>Kyzer</u> that "the legislature intended to punish capitally defendants found guilty of offenses listed in § 13-11-2," even though the offense is not set forth as an aggravating circumstance in § 13-11-6. Magwood's argument hinges on this decision being wrong as a matter of state law. Thus, as a threshold matter, this case presents the question whether, when a state court interprets its own State's statute, this court can find that the state court's interpretation of its own law is wrong and find that the state court's interpretation therefore violates the Constitution. This, this court cannot do.

As early as 1948, the Supreme Court stated that neither it nor other federal courts are "at liberty to

conjecture that the [state] court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied." Gryger v. Burke, 334 U.S. 728, 731 (1948).  Since then, the Supreme Court and lower federal courts have consistently held that, while federal courts must enforce constitutional standards, they are not free to ignore or reinterpret state law, as that law is interpreted by state courts.  As the Supreme Court emphasized in Wainwright v. Goode, 464 U.S. 78, 84 (1983), and reemphasized in Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

These decisions undermine the major premise of Magwood's argument: that the state court, in his

sentencing, acted outside the authority of state law.  To be sure, Magwood attempts to couch his argument about the state courts' interpretation of state law in constitutional standards, but the premise of his argument directly challenges the Alabama Supreme Court's interpretation of Alabama's 1975 death-penalty scheme. In order to prevail, Magwood would have to convince this court that <u>Kyzer</u> does not represent an authoritative interpretation of Alabama's capital-sentencing statute; that is, Magwood would have to convince the court that <u>Kyzer</u> is not state law, and that he has not done.

This court can, of course, review the consistency of the Magwood's sentencing with the United States Constitution.[3]

---

3.  Magwood also does not appear to argue that the state courts' interpretation of § 13-11-6 was "an obvious subterfuge to evade consideration of a federal issue," the "rare circumstance" in which the federal courts are authorized to re-examine state-court determinations of state law.  <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 n 11 (1975).  Even if he did, this court would not find that such a subterfuge occurred.

b.

Magwood also argues that the state sentencing court, in imposing the death sentence, improperly considered factors that, if employed, would be non-statutory factors, such as the fact that the victim was shot three times at close range with a pistol.  Pet. at 56.  It appears that Magwood has not pursued this line of argument in his merits brief.  However, to the extent Magwood has not abandoned it, this court would not grant relief on that claim because the reasoning of Goode controls here, too.  The Alabama Court of Criminal Appeals reviewed this claim at the postconviction stage and held that the sentencing court found the existence of only one aggravating circumstance.  Insofar as this is a finding of fact, this court does not think it an "unreasonable" one.  28 U.S.C. § 2254(d)(2), see also Goode, 464 U.S. at 85.

Regardless of remarks the state trial court made during the sentencing colloquy about the circumstances

and conditions of the offense conduct, nothing in the record suggests that the court based its sentence of death on factors other than the capital offense and its elements (which, in this case, constituted the aggravating circumstance) and its weighing of that aggravating circumstance against the mitigating circumstances it found existed in this case.

Furthermore, even if the sentencing court did consider one or more non-statutory aggravating factors in violation of <u>state law</u>, federal-habeas relief is available to Magwood only if he can demonstrate a violation of federal law. <u>See</u> <u>Goode</u>, 464 U.S. at 83-84; <u>see also</u> 28 U.S.C. 2254(d)(1). Magwood would face a heavy burden in demonstrating that the consideration of such factors in violation of state law "so infects the balancing process created by the [Alabama] statute that it is <u>constitutionally</u> impermissible ... to let the sentence stand." <u>Barclay v. Florida</u>, 463 U.S. 939, 956 (1983) (emphasis added). <u>See also</u> <u>Zant v. Stephens</u>, 462

U.S. 862, 889 (1983) (rejecting a similar claim because "any possible impact [of the invalid aggravating factor] cannot fairly be regarded as a <u>constitutional</u> defect in the sentencing process" (emphasis added)).  Accordingly, this court rejects Magwood's claim that the state-sentencing court considered non-statutory aggravating factors in violation of the Constitution when it sentenced Magwood to death.


### 3. Executing the Mentally Ill

In his merits brief, Magwood claims that it is a violation of the Eighth Amendment to execute a defendant who is as mentally ill as he is.  Pet. Br. at 33-35.  The State correctly points out that Magwood did not present this claim in his petition for habeas corpus, to which Magwood replies that it should be considered part of his 'proportionality' claim because executing a person who had serious mental impairment at the time of the offense

would be disproportionate to that defendant's culpability.  Id. at 34.

Insofar as Magwood intends to fold this claim into his proportionality claim, it must be rejected for the reasons already stated in the court's discussion of proportionality review: this court's review is limited to whether the state court undertook proportionality review in good faith, and this court finds that it did.  See Subsection III.A.1, supra.

To the extent Magwood wishes the court to consider independently whether persons with mental impairments such as his can be executed under the Eighth Amendment, the court agrees with the State that no separate Eighth Amendment claim was raised in the petition for habeas corpus.  Regardless of whether the court may consider a claim not raised in the petition, none of the Supreme Court cases cited in Magwood's brief, Roper v. Simmons, 543 U.S. 551 (2005); Atkins v. Virginia, 536 U.S. 304 (2002); Ford v. Wainwright, 477 U.S. 399 (1986), holds

that the Eighth Amendment prohibits the execution of a person who committed his offense while under the influence of extreme mental or emotional disturbance or whose capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.  See R. Tab 1 at R-27 (finding that these mitigating circumstances existed). The federal-habeas statute prohibits the court from granting relief on any claim unless its adjudication in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1). Under such a demanding standard of review, and in the absence of a holding by the United States Supreme Court that supports his claim, Magwood cannot obtain habeas relief on grounds that the Eighth Amendment prohibits the execution of a person who committed his offense while suffering from mental illness such as he was.

### 4. Conclusion

In sum, Magwood's claim that his death sentence was freakish, arbitrary and disproportionate in violation of due process and the Eighth Amendment is rejected. First, the federal courts' role in policing state-court proportionality review is extremely limited, and the state court did not deny proportionality review. Second, the Alabama Supreme Court's <u>Kyzer</u> decision precludes this court from considering whether the use of a non-statutory aggravating factor violated Magwood's constitutional rights because <u>Kyzer</u> is a definitive interpretation of state law. Third, the state appellate court has already determined that the sentencing court did not rely on non-statutory aggravating circumstances and that determination was not unreasonable, nor is it likely that the consideration of such factors would have rendered the death sentence unconstitutional. Last, the United States Supreme Court has not held that it is unconstitutional to

35

execute someone for a crime committed while suffering from serious mental illness.

### B. Retroactive Application of Ex Parte Kyzer

Next, Magwood claims that his death sentence violates the fair-warning requirement of the due process clause because it was based on an Alabama Supreme Court decision, Ex parte Kyzer, 399 So.2d 330 (Ala. 1981), that was decided after his offense and retroactively applied to his case.  The principle of 'fair warning' has "long been part of our tradition," United States v. Bass, 404 U.S. 336, 348 (1971), and is recognized as "fundamental to our concept of constitutional liberty," Marks v. United States, 430 U.S. 188, 191 (1977).  As early as 1931, Justice Holmes wrote: "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law

intends to do if a certain line is passed."  <u>McBoyle v.</u>
<u>United States</u>, 283 U.S. 25, 27 (1931).

That principle has been cited and applied dozens of
times by the United States Supreme Court.  <u>See, e.g.</u>,
<u>Arthur Anderson LLP v. United States</u>, 544 U.S. 696, 703
(2005); <u>Rogers v. Tennessee</u>, 532 U.S. 451 (2001); <u>United</u>
<u>States v. Lanier</u>, 520 U.S. 259, 265-66 (1997); <u>United</u>
<u>States v. Aguilar</u>, 515 U.S. 593, 600 (1995); <u>Marks</u>, 430
U.S. at 191-92; <u>Douglas v. Buder</u>, 412 U.S. 430, 432
(1973) (per curiam); <u>Rabe v. Washington</u>, 405 U.S. 313,
316 (1972) (per curiam); <u>Bass</u>, 404 U.S. at 348; <u>Bouie v.</u>
<u>City of Columbia</u>, 378 U.S. 347 (1964); <u>United States v.</u>
<u>Harriss</u>, 347 U.S. 612, 617 (1954).  According to the
latest definitive statement of the fair-warning rule, due
process prohibits the retroactive application of judicial
interpretations of criminal statutes that are "unexpected
and indefensible by reference to the law which has been
expressed prior to the conduct in issue."  <u>Rogers</u>, 532
U.S. at 461 (quoting <u>Bouie</u>, 378 U.S. at 354).

37

In this case, as the court will explain in more detail below, the fair-warning principle compels the court to grant Magwood habeas relief as to his death sentence.  At the time Magwood committed his offense, given the findings of the sentencing court, state law did not allow for him to be sentenced to death.  When he was sentenced, however, the trial court retroactively applied a change in the law, made subsequent to Magwood's offense but before his trial, that permitted a death sentence in cases such as his.  Such a sentence runs afoul of fairness, due process, and clearly established Supreme Court precedent.

## 1. Relevant Supreme Court Precedent: <u>Bouie</u> and <u>Rogers</u>

Magwood claims that he was denied due process when the sentencing court sentenced him to death without finding the existence of an aggravating circumstance under former 1975 Ala. Code § 13-11-6, thereby sentencing him to a punishment he could not have received under the

38

law that existed at the time of his offense.  The basic factual premises of Magwood's claim are correct.  His offense conduct, the murder of Sheriff Grantham, occurred on March 1, 1979, more than two years before the Alabama Supreme Court decided Ex parte Kyzer.  And the trial court whose sentence is challenged in the habeas petition now before the court "d[id] not find the existence of any ... aggravating circumstance in section 13-11-6...."  R. Tab 1 at R-25.  Consequently, the question before the court is whether the trial court's sentence of death on that basis is properly understood as a retroactive application of a subsequent judicial decision that denies Magwood due process of law.

As the parties have noted in their briefs, the relevant United States Supreme Court decisions are Bouie v. City of Columbia, 378 U.S. 347 (1964), and Rogers v. Tennessee, 532 U.S. 451 (2001).  In Bouie, the Court held that the South Carolina Supreme Court had violated due process in affirming the convictions of civil-rights

'sit-in' protesters for violating that state's criminal trespass statute.    In  a  decision  issued  after  the defendants' conduct but before affirming the convictions, the state supreme court had construed the statute, which on its face prohibited entry on another person's land after  notice  prohibiting  such  entry,  to  prohibit remaining on land after receiving notice to leave.   532 U.S. at 349-50 & n.2.   On review, the United States Supreme Court noted "the basic principle that a criminal statute must give fair warning of the conduct that it makes  a  crime,"  <u>id</u>. at  350,  and  stated  that  "a deprivation of the right of fair warning can result ... from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language," <u>id</u>. at 352. "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect."   <u>Id</u>. at 354 (internal quotation marks omitted).

40

Applying those principles, the Court found that neither the plain language of the statute nor prior South Carolina decisions interpreting it supported the application of the criminal trespass law to persons who remained on land after they were asked to leave. The Court therefore held that the challenged convictions contravened due process of law.

In Rogers, the question was whether the Tennessee Supreme Court's abolition of that State's common-law 'year-and-a-day rule' could be retroactively applied to affirm the murder conviction for a homicidal act that occurred more than a year and a day before the death of the victim. On review of the conviction, the United States Supreme Court disavowed dicta from Bouie suggesting that the fair-warning principle of the due process clause, as it applies to judicial decisions, is coextensive with the ex post facto clause as applied to legislative acts. Although the "limitations on ex post facto judicial decisionmaking are inherent in the notion

of due process," id. at 456, the "decision in Bouie was
rooted firmly in well established notions of due
process," and did not "incorporate jot-for-jot the
specific categories" of retroactive legislative acts
barred by the ex post facto clause, id. at 459.  Instead,
the "more basic and general principle of fair warning
that Bouie so clearly articulated" should be applied to
challenges to retroactive judicial decisionmaking.  Id.
Extending the strict rules of the ex post facto clause to
all instances of judicial decisionmaking would "evince
too little regard for the important institutional and
contextual differences between legislative, on the one
hand, and common law decisionmaking, on the other."  Id.
at 460.

Applying these principles to the retroactive
abolition of the year-and-a-day rule in Tennessee, the
Court held that the abolition of the rule, which was
"widely viewed as an outdated relic of the common law,"
id. at 462, did not violate the fair-warning principle of

**42**

the due process clause.  The Court noted that the year-
and-a-day rule was nowhere to be found in the statutory
criminal code of Tennessee, and it had "only the most
tenuous foothold" as part of the criminal law, including
precedential case law, of that State.  <u>Id</u>. at 464.  In
sum, the Tennessee court's retroactive abolition of the
rule was not "unexpected and indefensible such that it
offended the due process principle of fair warning
articulated in <u>Bouie</u> and its progeny."  <u>Id</u>. at 466
(internal quotation marks omitted).  The challenged
conviction was therefore affirmed.

To summarize, <u>Rogers</u>, while not overturning <u>Bouie</u>,
limited it to a considerable extent.  <u>Rogers</u> made clear
that the due process clause does not incorporate against
judicial decisionmaking all the limitations that the <u>ex</u>
<u>post facto</u> clause places on legislatures.  <u>Rogers</u>, 532
U.S. at 458-59.  The due process clause is not implicated
by the retroactive application of every judicially-
created change in the law that happens to be detrimental

to a defendant.  Id. at 460.  Instead, due process is
violated by such retroactive application only when the
new judicial interpretation of a criminal statute is
"unexpected and indefensible by reference to the law
which had been expressed prior to the conduct in issue."
Id. at 462 (quoting Bouie, 378 U.S. at 354).  Thus, if a
judicial decision is a "routine exercise of common law
decisionmaking in which the court brought the law into
conformity with reason and common sense" rather than "a
marked and unpredictable departure from prior precedent,"
id. at 467, then its retroactive application to offense
conduct that occurred before the decision was made would
not contravene the fair-warning principle of the due
process clause.

## 2. Bouie Is Controlling

    Faced with these two United States Supreme Court
decisions, this court must now decide whether the
retroactive application of Ex parte Kyzer is barred by

**44**

Bouie or permitted under Rogers.  This court concludes
that, even taking into account the language of Rogers
that limits the scope of Bouie, Bouie governs the outcome
in this case.  In other words, the court concludes that
the retroactive application of Ex parte Kyzer violated
due process because it was "unexpected and indefensible
by reference to the law which had been expressed prior to
the conduct in issue."  Bouie, 378 U.S. at 354 (internal
quotation marks omitted), quoted in Rogers, 532 U.S. at
461.

     The principal difference between Bouie and Rogers is
that Bouie concerned a "retroactive judicial expansion of
narrow and precise statutory language," Bouie, 378 U.S.
at 353 (emphasis added), whereas the retroactive judicial
decision challenged in Rogers "involve[d] not the
interpretation of a statute but an act of common law
judging," Rogers, 532 U.S. at 461 (emphasis added).  In
this case, Magwood challenges the Alabama Supreme Court's

expansive interpretation of a criminal statute, not any changes it made to a common-law rule.

The Rogers court, in assessing whether the abolition of the year-and-a-day rule was "unexpected and indefensible by reference of the law which had been expressed prior to the conduct in issue," based its decision on three considerations, none of which applies to Kyzer. First, "[t]he year and a day rule [was] widely viewed as an outdated relic of the common law," id. at 462, whereas the Alabama death-penalty statute construed by the Alabama Supreme Court in Kyzer was only a few years old. Second, "the year and a day rule ha[d] been legislatively or judicially abolished in the vast majority of jurisdictions recently to have addressed the issue," id. at 463, whereas this court is unaware of other States' courts that, prior to Magwood's offense conduct, had interpreted state statutes' aggravating-circumstances requirements to be non-binding on the sentencing judge. Third, "at the time of [Rogers's]

46

crime the year and a day rule had only the most tenuous foothold as part of the criminal law of the State of Tennessee" and "did not exist as part of Tennessee's statutory criminal code," id. at 464, whereas at the time of Magwood's crime the aggravating-circumstances requirement was an express part of Alabama's statute and the court knows of no prior judicial decisions in Alabama that gave the aggravating-circumstances requirement "only the most tenuous foothold" as part of the law of that State.

In fact, numerous pre-Kyzer decisions by the Alabama Court of Criminal Appeals strongly imply or suggest that a defendant convicted of a capital offense could not, before Kyzer, be sentenced to death unless the trial court found the existence of at least one aggravating circumstance as enumerated in former 1975 Ala. Code § 13-11-6.  For example, state courts held that the trial court could not base a sentence of death on an aggravating circumstance from § 13-11-6 that does little

**47**

more than describe the aggravated capital offense from § 13-11-2.  Colley v. State, 405 So.2d 374 (Ala. Cr. App. 1980); Keller v. State, 380 So.2d 926 (Ala. Cr. App. 1979).  State courts also held that § 13-11-6 lists the only aggravating circumstances that could be considered by the sentencing judge.  Berard v. State, 402 So.2d 1044 (Ala. Cr. App. 1980); Tomlin v. State, 443 So.2d 47 (Ala. Cr. App. 1979).  These decisions, combined with a plain reading of the text of § 13-11-4, belie any notion that the aggravating-circumstances requirement had "only the most tenuous foothold" as the law in Alabama prior to Kyzer.[4]

In contrast to the Rogers case, the circumstances of Bouie mirror those of this case in most salient respects. First, Bouie and this case both involve the judicial

---

[4]. Admittedly, Keller is the only one of these decisions that was issued prior to Magwood's offense conduct.  However, the other three decisions did little more than confirm what Keller clearly implied and the text of the statute itself clearly stated: the aggravated offense from § 13-11-2 could not itself constitute the sole aggravating circumstance justifying a sentence of death.

interpretation of <u>statutory</u> language, not the evolution of judge-made common law.  Second, in both cases, the statutory language was precise as written, and did not appear, prior to the challenged state-court decision, to welcome the interpretation given by the judiciary.  In <u>Bouie</u>, "[b]y its terms, the statute prohibited only 'entry upon the lands of another ... after notice from the owner ... prohibiting such entry....'  <u>Id</u>. at 356. Similarly, former 1975 Ala. Code § 13-11-4, by its own terms, required that "[i]f the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which shall at least include ... [o]ne or more of the aggravating circumstances enumerated in section 13-11-6, which it finds exists in the case and which it finds sufficient to support the sentence of death."  Third, in both cases, subsequent acts of the state legislatures were revealing as to the meaning of the law prior to the judicial decision at

issue:  in Bouie, the Tennessee legislature enacted a statute criminalizing the defendants' conduct shortly after the sit-in occurred; conversely, in this case, the Alabama legislature overturned Kyzer in its 1981 death-penalty statute by creating a separate subsection that expressly states, "Unless at least one aggravating circumstance as defined in section 13A-5-49 exists, the sentence shall be life without parole."  1975 Ala. Code § 13A-4-45(f).[5]

Fourth, in neither case did the retroactively applied judicial interpretation have support in state-court decisions prior to the offense conduct.  In Bouie, the United States Supreme Court reviewed 95 years of state-court interpretation of the criminal-trespass statute and

_____

5.  In addition to the subsequent legislative enactment, a subsequent state-court decision implicitly recognized that Kyzer changed the law.  Ex parte Woodard, 631 So.2d 1065, 1071 (Ala. Cr. App. 1993), cites Kyzer for the proposition that "under former capital offense statutes, death sentence could not be upheld where defendant was convicted of the intentional murder of three persons in one course of conduct, but no statutory aggravating circumstances existed."

found no authority for the interpretation given by the South Carolina Supreme Court in the challenged case.   378 U.S. at 361.   Although Alabama's 1975 death-penalty statute was not nearly as old as the South Carolina criminal-trespass statute, this court is aware of no published decision of an Alabama state court, prior to Magwood's offense, that permitted a death sentence where no aggravated circumstance as enumerated in § 13-11-6 had been found.   As discussed, numerous pre-<u>Kyzer</u> decisions of the Alabama Court of Criminal Appeals strongly imply that the sentencing court must find the existence of at least one aggravating circumstance as enumerated in § 13-11-6 in order to sentence the defendant to death.   <u>Colley v. State</u>, 405 So.2d 374 (Ala. Cr. App. 1980); <u>Berard v. State</u>, 402 So.2d 1044 (Ala. Cr. App. 1980); <u>Tomlin v. State</u>, 443 So.2d 47 (Ala. Cr. App. 1979); <u>Keller v. State</u>, 380 So.2d 926 (Ala. Cr. App. 1979).   And just as in <u>Bouie</u>, where the South Carolina court had cited two previous cases but the United States Supreme Court found

51

those cases to be "simply irrelevant," id. at 357-58, in this case Kyzer cited two previous Alabama cases, Evans v. State, 361 So.2d 666 (Ala. 1978) and Clements v. State, 370 So.2d 723 (Ala. 1979), which this court has reviewed and can safely say are irrelevant as well, at least insofar as they do not address the question of whether a defendant can be sentenced to death absent the finding of an aggravating circumstance as enumerated in § 13-11-6.

If anything, Clements suggests that the Kyzer decision was entirely unforeseeable. Clements, which was decided shortly before Magwood's offense conduct, recognizes several "long-settled rules of construction," 370 So.2d at 725, prohibiting the expansive judicial interpretation of criminal statutes:

> "A basic rule of review in criminal cases is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation, i.e., defendants.

"Penal statutes are to reach no further in meaning than their words.

"One who commits an act which does not come within the words of a criminal statute, according to the general and popular understanding of those words, when they are not used technically, is not to be punished thereunder, merely because the act may contravene the policy of the statute.

"No person is to be made subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused."

Id. (citations omitted).  Applying these rules to former 1975 Ala. Code § 13-11-4 ("If the court imposes a sentence of death, it shall set forth in writing ... findings of fact ... which ... include ... [o]ne or more of the aggravating circumstances enumerated in section 13-11-6."), it seems beyond dispute that the judicial construction of that statute announced in Kyzer was "unexpected and indefensible by reference to the law which had been expressed prior to" Magwood's offense

conduct.   Bouie, 378 U.S. at 354 (internal quotation
marks omitted), quoted in Rogers, 532 U.S. at 461.

### 3. Distinctions Between this Case and Bouie Are Immaterial

Admittedly, there is one aspect of this case that
makes it look more like Rogers than Bouie: Magwood, like
Rogers, undoubtedly committed a serious violent offense
the criminality of which is not in question.[6]  In Rogers,
the retroactivity of the challenged state-court decision
meant the difference between a conviction for murder and
a conviction for some form of aggravated assault, and in
this case the retroactivity of Kyzer means the difference
between a sentence of death and a sentence of life
without parole.  In Bouie, by contrast, the defendants'
conduct was innocent of any crime--and in fact, by most
standards, heroic.

---

6.   The State never expressly makes this argument
but, in a footnote, reminds the court, "At no time was
Magwood's conduct innocent in the instant case."  Resp.
Br. at 25 n.6.

However, although there is some <u>dicta</u> in <u>Bouie</u> to suggest that the defendants' due-process claim was "particularly compelling where, as here, [their] conduct cannot be deemed improper or immoral," 378 U.S. at 362, there is no language in <u>Bouie</u> that limits its holding to conduct that is <u>malum prohibitum</u> as opposed to <u>malum en se</u>. As for <u>Rogers</u>, although the Court's opinion in that case does refer to <u>Bouie</u> as a case about "the constitutionality of attaching criminal penalties to what previously had been <u>innocent</u> conduct," 532 U.S. at 459 (emphasis added), the Court never implies that its basis for distinguishing <u>Bouie</u> had anything to do with the moral content of Rogers's conduct or the fact that his conduct was, if not murder, a serious crime.

In fact, the significance of such a distinction was more or less rejected by Justice Holmes in <u>McBoyle v. United States</u>, 283 U.S. 25 (1931): "Although it is not likely that a criminal will carefully consider the text of the law before he <u>murders</u> or <u>steals</u>, it is reasonable

that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." 283 U.S. at 27 (emphases added). Accordingly, even though Magwood was guilty of a capital offense, as defined in former 1975 Ala. Code § 13-11-2, at the time he killed Sheriff Grantham, he had no fair warning that his conduct, which was committed absent any aggravating circumstances as enumerated in former 1975 Ala. Code § 13-11-6, could subject him to a death sentence. He was entitled to fair warning of "what the law intend[ed] to do," McBoyle, 283 U.S. at 27--that is, execute him--if he killed Sheriff Grantham absent any aggravating circumstances as enumerated in former 1975 Ala. Code § 13-11-6.

The 'innocent conduct' distinction should also be rejected in a case such as this one where the defendant is "innocent of the death penalty." Sawyer v. Whitley, 505 U.S. 333, 335 (1992). The United States Supreme

Court, while acknowledging that "[t]he phrase 'innocent of death' is not a natural usage of those words," <u>id</u>. at 341, has stated that "[s]ensible meaning is given to the term 'innocent of the death penalty' by allowing a showing ... that there was <u>no aggravating circumstance</u> or that some other condition of eligibility had not been met," <u>id</u>. at 345 (emphasis added). Here, Magwood was not eligible for the death penalty under Alabama state law, given the sentencing court's findings, at the time he committed his offense because the sentencing judge found no aggravating circumstances under former 1975 Ala. Code § 13-11-6. Therefore, he is "actually innocent" of the death penalty, and the fact that he is otherwise guilty of capital murder is of no consequence under <u>Bouie</u> and <u>Rogers</u>.[7]

---

7. Magwood's innocence of the death penalty would also excuse, under the miscarriage-of-justice exception, any procedural default that would otherwise bar his claim. <u>Sawyer</u>, 505 U.S. at 335; 2 Hertz & Liebman, <u>Federal Habeas Corpus Practice & Procedure</u> § 26.4, at 1369-71 (5th ed. 2005). Because the court has already adopted the magistrate judge's recommendation on other (continued...)

A similar distinction between this case and Bouie, and indeed between this case and Rogers, is that Bouie and Rogers involved challenges to the defendants' convictions, whereas this case involves a challenge to Magwood's sentence.  It is unsurprising that the State does not argue that the fair-warning principle of the due process clause does not apply to sentencing, as there is nothing about Bouie or subsequent case law, and certainly nothing about the due-process principles animating Bouie, that would restrict the fair-warning rule in such a way.

Indeed, to so limit the due process principles animating Bouie would contradict the United States Supreme Court's Apprendi-related jurisprudence, whose reasoning points to the conclusion that retroactively

_____

7.  (...continued)
grounds that this claim is not procedurally defaulted, Order of Jan. 27, 2004 (doc. no. 69), at 2, and because the Supreme Court has instructed that the actual-innocence exception should not be invoked unless all other avenues of relief are unavailable, Dretke v. Haley, 541 U.S. 386, 393-94 (2004), the court need not invoke the miscarriage-of-justice exception to the procedural default rule in this case.

applied aggravating factors in a death-penalty case are the functional equivalent of retroactively applied elements in a criminal offense.    In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Court held that under the Sixth Amendment any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.    530 U.S. at 490.    Of importance here, the <u>Apprendi</u> Court emphasized that it is of no relevance whether state law labels a particular fact an 'element' of the offense or merely a 'sentencing factor.'    <u>Id</u>. at 494.    If the required finding exposes the defendant to an increase in punishment beyond what would be the maximum authorized statutory sentence absent the finding, then it is the "functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict."    <u>Id</u>. n.19.    The principles of <u>Apprendi</u> were applied to death sentences in <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), which stated that "enumerated aggravating

factors operate as 'the functional equivalent of an element of a greater offense,'" 536 U.S. at 609 (quoting Apprendi, 530 U.S. at 494 n.19), meaning that any fact, such as an aggravating factor, on which the state law conditions the imposition of the death penalty must be found by a jury beyond a reasonable doubt.  Ring, 536 U.S. at 589.

"There is no principled reason to distinguish, in this context, between what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes" an offense for purposes of the fair-warning principle of the due process clause. Sattazahn v. Pennsylvania, 537 U.S. 101, 111 (2003) (applying the Apprendi/Ring principles to a double-jeopardy claim).  That is, the significance of Apprendi and Ring for Bouie claims in death-penalty cases is not that juries, rather than judges, must find the 'aggravating' facts that elevate the sentence for a capital offense from life without parole to death.

Rather, Apprendi and Ring illustrate that enumerated aggravating circumstances, such as those in former 1975 Ala. Code § 13-11-6, operate as the "functional equivalent" of elements of an offense, which means that a death sentence based on the finding of aggravating circumstances that would not have authorized a death sentence at the time the offense conduct occurred is the "functional equivalent" of a conviction based on the finding of elements that would not have constituted a crime at the time the offense conduct occurred--precisely the type of conviction that violates the fair-warning principle of the due process clause under Bouie. Consequently, where, as here, the defendant challenges the retroactive application of a judicial decision that makes him eligible for a death sentence where he would not have been statutorily eligible before, the fair-warning principle unquestionably applies.[8]

_____

    8. The court notes that the Eleventh Circuit has "assume[d] arguendo, without deciding," that the fair-warning principle applies to sentencing. United States

(continued...)

In sum, this case is not distinguishable from <u>Bouie</u> in any way that is material to Magwood's claim.  The fair-warning principle applies here even though Magwood's conduct was not innocent and even though he challenges his death sentence rather than his conviction on the underlying capital offense.

### 4. Additional Arguments Are Unavailing

Briefly, the court will now address and reject five additional arguments, only three of which were raised by the State, against granting Magwood relief on this claim.

---

8.   (...continued)
<u>v. Duncan</u>, 400 F.3d 1297, 1307 n.12 (11th Cir. 2005).
<u>Duncan</u>, however, involved a challenge to the retroactive application of the changes made to the United States Sentencing Guidelines by <u>United States v. Booker</u>, 543 U.S. 220 (2005), not aggravating factors in a capital sentencing statute.  <u>See</u> <u>Webster v. Woodford</u>, 369 F.3d 1062, 1069 (9th Cir. 2004) (holding that <u>Bouie</u> applies to "judicial constructions of substantive elements of criminal law such as aggravating circumstances" in a capital case even though it "does not apply to sentencing schemes").

a.

First, although neither party cites <u>Jackson v.</u> <u>Thigpen</u>, 752 F.Supp. 1551 (N.D. Ala. 1990) (Clemon, J.), <u>aff'd in relevant part & rev'd on other grounds</u> <u>sub nom</u>. <u>Jackson v. Herring</u>, 42 F.3d 1350 (11th Cir. 1995), this court thinks it important to distinguish the holding in that case from Magwood's claim here.  In <u>Jackson</u>, the district court rejected the habeas petitioner's claim that the retroactive application of <u>Kyzer</u> violated her right to fair warning under the due process clause. Jackson challenged the state court's "dual use" of the same fact (her prior conviction for second-degree murder) to support her conviction of an aggravated offense, former 1975 Ala. Code § 13-11-2(a)(13) ("Any murder committed by a defendant who has been convicted of murder in the first or second degree in the 20 years preceding the crime."), and to support the finding of an aggravated circumstance, <u>id</u>. § 13-11-6(2) ("The defendant was previously convicted of another capital felony or a

63

felony involving the use or threat of violence to the person."). In <u>Jackson</u>, however, the aggravating circumstance found by the court was actually enumerated in § 13-11-6; it was not the aggravated offense enumerated in § 13-11-2 being used as an aggravating circumstance for sentencing purposes. The district court also noted that prior to <u>Kyzer</u>, the Alabama Supreme Court had allowed death sentences to stand where a single act supported both an element of the offense and an aggravating factor. <u>Jackson</u>, 752 F.Supp. at 1558. Based on these facts, the district court held that <u>Kyzer</u> "did not make any substantive change in Alabama law regarding the dual use of a single prior criminal act and that result should have been anticipated." <u>Id</u>.[9]

_____

9. To the extent the <u>Jackson</u> court based its decision on the facts that the petitioner's offense conduct occurred after <u>Beck</u> and that language in <u>Beck</u> predicted language in <u>Kyzer</u>, 752 F.Supp. at 1558, it may have overlooked the fact that relevant language in <u>Beck</u> was modified and released simultaneously with <u>Kyzer</u>. <u>See</u> <u>supra</u> note 2.

64

The same cannot be said regarding <u>Kyzer</u>'s effect on the dual use of a aggravated offense that is <u>not</u> enumerated as an aggravating circumstance in § 13-11-6. With regard to Jackson's claim, not only had the Alabama Supreme Court approved of numerous death sentences based on dual use of a single prior criminal act, but, in addition, the plain text of the statute permitted such dual use. The Alabama Court of Criminal Appeals' decisions setting aside death sentences based on such dual use had never been settled law, and, by permitting dual use in <u>Kyzer</u>, the Alabama Supreme Court more or less confirmed that the statute meant what it said. In contrast, <u>Kyzer</u>'s other holding upended the literal meaning of the statute with respect to enumerated aggravating circumstances. Not only had prior court decisions implied that the court must find the existence of an aggravating circumstance enumerated in § 13-11-6, no court had ever approved a death sentence based on an

aggravating circumstance that was found in § 13-11-2 but
not in § 13-11-6.

In other words, Kyzer really involved two
interpretations of the capital-sentencing procedures
under the 1975 statute.  First, it confirmed what was
unsettled before: the sentencing court could consider an
aggravating circumstance from § 13-11-6 even if that
aggravating circumstance was substantially the same, or
was based on the same facts, as the aggravated offense
from § 13-11-2 averred in the indictment.  This first
interpretation, which we might call the 'dual-use'
holding of Kyzer, was the issue the court faced in
Jackson v. Thigpen, and the district court in that case
rejected Jackson's claim that she did not have fair
warning of Kyzer's dual-use holding.  Second, Kyzer
interpreted the statute to permit the sentencing court to
consider an aggravating circumstance that did not even
appear in § 13-11-6, so long as that aggravating
circumstance was the aggravated offense from § 13-11-2

66

that was averred in the indictment. This second
interpretation of the statute, as opposed to the dual-use
holding, was a judicial expansion of the plain text of
the statute and had no support in prior case law. The
court is confident that by holding today that Magwood was
denied fair warning in being sentenced to death absent
the existence of any aggravating circumstance enumerated
in § 13-11-6, it in no way undermines the district
court's holding in <u>Jackson v. Thigpen</u> that the petitioner
in that case had not been denied fair warning in being
sentenced to death under the dual-use doctrine.


### b.

Second, although the State does not raise a
preclusion defense, the court thinks it important to
point out the fact that this is not Magwood's first
federal-habeas petition and consider whether his claim is
barred under AEDPA's 'successive petition' rule.
Magwood's first habeas petition was before the federal

district court over 20 years ago, and this court denied the petition as to Magwood's conviction and granted the petition as to his death sentence. <u>Magwood v. Smith</u>, 608 F.2d 218 (M.D. Ala. 1985) (Hobbs, C.J.). At resentencing, Magwood again received a death sentence, and his habeas petition challenging the resentencing is now before this court.

From a review of this court's 1985 decision, it appears that Magwood did not raise, in his first habeas case, the fair-warning claim, even though he could have done so. At Magwood's first sentencing, the state court committed the <u>same</u> constitutional error identified here: it retroactively applied <u>Kyzer</u> to Magwood's case and sentenced him to death without finding the existence of any aggravating circumstance in former 1975 Ala. Code § 13-11-6. However, this court never addressed any fair-warning claim in its 1985 opinion, even though <u>Bouie</u>'s fair-warning principle represented clear Supreme Court precedent at the time.

This raises the question of whether Magwood was precluded from raising the issue when challenging his resentencing. In habeas proceedings, federal courts are required to follow the statutory rules on 'successive petitions' rather than the judge-made law on res judicata. AEDPA bars claims "presented in a second or successive habeas corpus application," except in very limited circumstances. 28 U.S.C. § 2244(b)(2). Because the answer to precisely what constitutes a second or successive petition is not clarified in AEDPA, courts must often interpret the statute to see if a specific claim is second or successive.

Here, the court concludes that Magwood's fair-warning claim is not a successive petition within the meaning of AEDPA. As this court discussed in a previous opinion in this case, Magwood v. Jones, ___ F.Supp.2d ____, 2007 WL 325370 (M.D. Ala. 2007) (Thompson, J.), the Eleventh Circuit has concluded that, under AEDPA, habeas petitions challenging the constitutionality of a resentencing

proceeding are not successive to petitions that challenge the underlying conviction and original sentence.  <u>In re Green</u>, 215 F.3d 1195 (11th Cir. 2000) (per curiam); <u>see also</u> 2 Hertz & Liebman, <u>Federal Habeas Corpus Practice & Procedure</u> § 28.3b(i), at 1412 (5th ed. 2005) ("When a petitioner files a second or subsequent petition to challenge a criminal judgment other than the one attacked in an earlier petition, it cannot be said that the two petitions are 'successive.'").  In this court's earlier opinion, it addressed the issue of whether Magwood's <u>Brady</u> claim as it related to his resentencing was successive to his <u>Brady</u> claim as it related to his underlying conviction.  "Although the State suppressed the same evidence at his trial, the suppression at resentencing was an independent constitutional error that originated at the resentencing proceedings."  <u>Magwood</u>, ___ F.Supp.2d at _____, 2007 WL 325370 at *5.  Here, this court is presented with an analogous issue: Although the state court committed the same fair-warning error at

Magwood's original sentencing, the fair-warning error at resentencing was an independent constitutional error--and the habeas petition on resentencing challenges a separate judgment.  Therefore, the court concludes that Magwood's fair-warning claim is not successive within the meaning of AEDPA.

Having concluded that the claim is not barred as successive under AEDPA, the court need not consider whether some form of common-law res judicata might apply, see Allen v. McCurry, 449 U.S. 90, 94 (1980) (defining claim preclusion), because the State did not raise a claim-preclusion defense.  See Arizona v. California, 530 U.S. 392, 410 (2000) ("[Where] the technical rules of preclusion are not strictly applicable, the principles upon which these rules are founded should inform our decision.  Those principles rank res judicata an affirmative defense ordinarily lost if not timely raised." (internal quotation marks, brackets, and citation omitted)); Louisville & N.R. Co. v. M/V Bayou

**Lacombe**, 597 F.2d 469, 471 n.1 (5th Cir. 1979) (<u>res</u> <u>judicata</u> is an affirmative defense and as such is waivable).[10]

Furthermore, unlike in this court's consideration of the <u>Brady</u> issues in its previous opinion, <u>Magwood</u>, ___ F.Supp.2d at _____, 2007 WL 325370 at **5-9, here the law-of-the-case doctrine does not apply because this court did not decide the fair-warning claim in 1985.  <u>See</u> <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983) ("[T]he doctrine [of law of the case] posits that when a court <u>decides</u> upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (emphasis added)).  Accordingly, even though Magwood arguably could have, but did not, raise the fair-warning claim in his habeas petition challenging his

_____

10. In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

first conviction and sentencing, he is not precluded from raising it here.

c.

Third, the State argues that Magwood was given 'fair warning' that he could be sentenced to death because his trial, sentencing, and resentencing all occurred subsequent to March 6, 1981, when the Alabama Supreme Court issued its decision in Kyzer. Resp. Br. at 24-25. This argument is without merit. Under the fair-warning principle of the due process clause, the relevant question is not whether the defendant will be surprised in the courtroom by the retroactive application of a novel judicial construction of a criminal statute, but whether such novel construction was unforeseeable at the time of the defendant's unlawful conduct. See Bouie, 378 U.S. at 354 ("If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in

issue, it must not be given retroactive effect." (internal quotation marks omitted and emphasis added)). In fact, Bouie itself involved the retroactive application of a judicial decision, City of Charleston v. Mitchell, 123 S.E.2d 512 (S.C. 1961), that had been issued prior to the state supreme court's decision affirming their convictions; the critical point was that Mitchell was decided subsequent to the Bouie defendants' conduct. See Bouie, 378 U.S. at 350 n.2.

In Magwood's case, the offense conduct occurred on March 1, 1979, and the Alabama Supreme Court issued Ex parte Kyzer on March 6, 1981. Therefore, as in Bouie, at the time of the offense conduct, Magwood did not have fair notice that he could be sentenced to death absent at least one aggravating circumstance enumerated in former 1975 Ala. Code § 13-11-6.

**74**

d.

Fourth, the State continues to press its procedural-default defense, arguing that Magwood did not raise his fair-warning claim in state court.  Resp. Br. at 21-23. Although this court has already adopted the magistrate judge's recommendation that the claim is not procedurally defaulted because the Alabama Court of Criminal Appeals denied it on the merits (doc. no. 69, overruling State's objection, doc. no. 61, to the magistrate judge's report and recommendation, doc. no. 59), this court will now address an additional reason why the State's procedural-default defense as to this claim is without merit.

Under the procedural-default rule, which is a component of both the adequate-and-independent-state-grounds and exhaustion doctrines, a habeas petitioner is procedurally barred from pursuing a claim either not raised in state court or correctly rejected in state court on state-law procedural grounds.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-32 (1991); <u>Harmon v. Barton</u>,

894 F.2d 1268, 1270 (11th Cir. 1990).   If a petitioner
fairly presented his federal claim throughout state-court
collateral proceedings, then the claim is exhausted and
preserved for federal-habeas review even if the state
court chooses not to address it.   <u>Kelley v. Sec'y for
Dep't of Corrections</u>, 377 F.3d 1317, 1345 (11th Cir.
2004); 2 Hertz & Liebman, <u>supra</u>, § 23.3b, at 1073.

Here, the question is whether Magwood raised his
fair-warning claim in his Rule 20 state postconviction
petition.   A review of Magwood's Rule 20 petition and
appellate brief reveals that he did.   In the Rule 20
petition, Magwood alleges that the "trial court, ... in
applying and following an interpretation which was not
rendered until after Petitioner's conduct in 1979, ...
violated Petitioner's constitutional rights including
those secured by the Fifth, Eighth and Fourteenth
Amendments and the prohibitions against <u>ex post facto</u>
laws in the constitutions of the United States and
Alabama."   Seventh Amended Rule 20 Pet., R. Tab 21, at

21-22.   Then, in the Rule 20 appellate brief to the
Alabama Court of Criminal Appeals, Magwood again
preserves the claim: "[T]he absence of any statutory
aggravating circumstance and the lack of notice given by
the 1975 Act for the retroactive application of the
decision in <u>Kyzer</u> rendered Mr. Magwood's sentence
unconstitutional under the 5th, 8th and 14th Amendments."
Appellant Br., R. Tab 25, at 23.

   By making these arguments in his state postconviction
pleadings, Magwood exhausted his fair-warning claim and
preserved it for federal-habeas review.   The exhaustion
requirement is "not so draconian or formalistic as to
require petitioners to give a separate federal law
heading to each of the claims they raise in state court
to ensure exhaustion for federal review. [It] simply
require[s] that petitioners present their claims to the
state courts such that the reasonable reader would
understand each claim's particular legal basis and
specific factual foundation."   <u>Kelley</u>, 377 F.3d at 1344-

45.  By arguing in state postconviction proceedings that
the trial court violated Magwood's constitutional rights
by retroactively applying <u>Kyzer</u> to his case, Magwood
fairly presented his fair-warning claim to the state
courts and thereby preserved it for federal-habeas
review.


                              e.

      Last, the State argues that <u>Kyzer</u> was not unexpected
and indefensible by reference to prior state law because
the Alabama Supreme Court merely applied "traditional
rules of statutory construction" to discover what the
legislature intended.  Resp. Br. at 30.  According to the
State, the <u>Kyzer</u> court was merely rectifying an "anomaly"
in the statute, 399 So.2d at 334, an anomaly that caused
a "literal and technical reading of the statute" to be
"completely illogical and would mean the legislature did
a completely useless act," <u>id</u>. at 337.  Because a literal
reading would entail such a bizarre result, the State

essentially argues, the _Kyzer_ decision--like the abolition of the year-and-a-day rule in Tennessee--"was a routine exercise of [judicial] decisionmaking in which the court brought the law into conformity with reason and common sense." _Rogers_, 532 U.S. at 467. Although this court's role is not to second-guess the state court's authoritative opinion as to what the state legislature intended when it enacted the 1975 capital statute, the court cannot accept the State's argument that _Kyzer_ was little more than the "appl[ication of] traditional rules of statutory construction," Resp. Br. at 30.

Two considerations animate this court's conclusion on this point. First, as previously discussed, the traditional rules of statutory construction, as recognized by the Alabama Supreme Court in _Clements v. State_, require that criminal statutes be strictly construed in defendants' favor and reach no further in meaning than their words. 370 So.2d at 725. It therefore appears that the _Kyzer_ decision contravened the

principles of statutory construction as recognized by the Alabama Supreme Court, notwithstanding the Kyzer court's view that it was merely interpreting legislative intent. Kyzer, 399 So.2d at 338.

Second, the court cannot help but disagree with the Alabama Supreme Court's dicta in Kyzer that the literal reading of the statute "would be completely illogical and would mean the legislature did a completely useless act by creating a capital offense for which the defendant could not ultimately receive the death penalty." Kyzer, 399 So.2d at 337. In fact, the statute expressly provides for a sentence of life without parole for any defendant convicted of an aggravated offense but for whom the aggravating circumstances in § 13-11-6 do not outweigh the mitigating circumstances. See former 1975 Ala. Code § 13-11-4. The court is aware of no other criminal offense in the Alabama code at the time of Magwood's conduct, other than a capital offense enumerated in § 13-11-2, that could have resulted in a

sentence of life imprisonment without parole.  If the legislature, in enacting the 1975 statute, had wished to specify certain offense conduct that was severe enough to warrant life imprisonment without parole but not severe enough to warrant a death sentence, then it would not be "completely illogical" or a "completely useless act" to allow for the possibility that a defendant could be convicted of a capital offense under § 13-11-2 but, because of the lack of aggravating circumstances as enumerated in § 13-11-6, not be sentenced to death.

Again, this court is in no position to reject the Alabama Supreme Court's authoritative opinion as to the legislative intent underlying the statute; the court merely thinks it important to point out that the conclusion it drew in Kyzer was far from an inevitable interpretation of a statute and that the statute would not necessarily be nonsensical without the Kyzer gloss. Consequently, Kyzer was far from "a routine exercise of [judicial] decisionmaking in which the court brought the

law into conformity with reason and common sense,"
Rogers, 532 U.S. at 467, and it was far from an
inevitable application of well-accepted canons of
statutory interpretation.  It was a substantive change in
the law of which Magwood did not have 'fair warning.'
For that reason, Magwood's death sentence violates the
due process clause of the Fourteenth Amendment and his
petition for habeas corpus is due to be granted on that
ground.[11]

---

11. The court notes that Magwood's counsel, at the
resentencing hearing, essentially conceded that the court
could sentence Magwood to death without finding an
aggravating circumstance in former 1975 Ala. Code § 13-
11-6.  R. Tab 1 at R-17 to -18 ("We say to Your Honor, as
we did in some proposed findings that we submitted to
you, that the capital offense itself is an aggravating
circumstance and that this Court has every right to
consider it as an aggravating circumstance.").  The
State, aside from generally renewing its already-rejected
procedural-default defense, makes no independent argument
that Magwood's due process rights were not violated
because his attorney expressly conceded the issue.
However, to the extent that the defense attorney's
statement may undermine Magwood's subsequent claim that
his death sentence violated due process, the question
becomes whether Magwood was denied ineffective assistance
of counsel in violation of the Sixth Amendment.  Cf.
Murray v. Carrier, 477 U.S. 478, 488 (1986) (recognizing
(continued...)

## C. Purported Non-Compliance with the
## Writ of Habeas Corpus

Magwood next argues that the state-court findings at the 1986 resentencing were "incompatible" with this court's 1985 conditional grant of his habeas petition. Magwood v. Smith, 608 F.Supp. 218 (M.D. Ala. 1985) (Hobbs, C.J.), aff'd, 791 F.2d 1438 (11th Cir. 1986).

The controversy here has its roots in the failure of the original sentencing judge to find two statutory mitigating factors, and this court's decision that this failure made resentencing necessary. The 1981 sentencing judge failed to find that Magwood was, at the time of the crime, "under the influence of extreme mental or emotional disturbance," 608 F.Supp. at 225 (citing § 13-11-7(2)); the judge also failed to find that Magwood was

────────────────

(...continued)
ineffective assistance of counsel as an independent basis for relief where it is cause for procedural default). Magwood raises an ineffective-assistance claim as it related to the Kyzer issue in the instant petition, and the court will consider it infra at Subsection III.F.3.

"substantially impaired" in his "capacity to ...
appreciate the criminality of his conduct or to conform
his conduct to the requirements of law."  Id. (citing
§ 13-11-7(6)).  This court found that the "evidence of
the existence of [these] mitigating factors ... is so
overwhelming as to make the trial court's rejection of
their existence clearly erroneous."  Id. at 226.
However, this court also wrote that the existence of
these mitigating factors did not mean that Magwood was
legally insane under Alabama law:

> "The evidence with respect to
> petitioner's insanity as that legal
> concept is defined under Alabama
> law may have been sufficiently in
> conflict to make it a jury
> question.... Accordingly, while in
> this Court's opinion the evidence
> seems particularly strong that
> petitioner was insane at the time
> of the offense, this issue is
> properly left to the state courts.
> The matter of the existence of
> mitigating circumstances, however,
> is an altogether different matter."

Id. at 227. In other words, this court specifically found
that, while the evidence compelled a finding of the

mitigating factors recited above, it did not compel a
finding that Magwood was insane.  Therefore, this court
did not mandate that the state court, at resentencing,
find Magwood insane, and the state court's decision not
to do so did not violate this court's writ.


   D.  Failure to Empanel a Jury at Resentencing

   Magwood claims that his due-process interests were
violated by another purported violation of Alabama law:
the failure to empanel a jury in his 1986 resentencing.
In support of this contention, he cites Hicks v.
Oklahoma, 477 U.S. 343 (1980), and Ex parte Williams, 556
So.2d 744 (Ala. 1987).  Neither case establishes that
Magwood had a due-process interest in the empaneling of
a jury.

   In Hicks, the issue was whether, where an underlying
sentencing law was declared unconstitutional after a
defendant's sentencing, the defendant had a liberty
interest in the empaneling of a jury to redetermine the

sentence.   The United States Supreme Court held that, because there was error in the jury process (the jury sentenced the defendant based on a law that was not permissible under the State's constitution), the defendant did have such an interest, even though the jury could have sentenced him to the same amount of time under a constitutional sentencing scheme.   Hicks, however, is unhelpful to Magwood.   In this court's 1985 decision, no error was assigned to the jury process; this court's habeas order addressed only the state judge's findings.

Putting aside the question whether, because Ex parte Williams applies to a later version of Alabama's death-penalty statute, it even applies here, that case does not help Magwood either.   In Williams, the Alabama Supreme Court held that "the errorless application by the court of its part [of sentencing] does not cure the erroneous application by the jury of its part."   566 So.2d at 745. This case does not stand for the principle, as Magwood contends, that the defendant has an interest in a jury

being empaneled for resentencing even where the jury's recommendation is not assigned error; rather, it stands for the principle that, where the jury process is flawed, the judge cannot correct the flaw.  As stated, with its 1985 habeas decision, this court did not find that the jury process was flawed.

## E. Involuntary Medication

Magwood claims that he was denied due process of law because he was involuntarily medicated throughout his trial, sentencing, and resentencing.  In Sell v. United States, 539 U.S. 166 (2003), the Supreme Court held that the "Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account

of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 539 U.S. at 179. <u>See also</u> <u>Riggins v. Nevada</u>, 504 U.S. 127 (1992). Here, Magwood argues that "there are serious questions whether the State's forced medication ... deprived him of Due Process at his resentencing, and should be explored in discovery and at an evidentiary hearing." Pet. Br. at 70.

The magistrate judge previously recommended against an evidentiary hearing, and this court adopted that recommendation. Order of Jan. 27, 2004 (doc. no. 69). Furthermore, discovery in this case is complete. The question, then, is whether there is evidence in the record to support Magwood's claim that he was administered antipsychotic drugs against his will in such a way that would implicate his due process rights at resentencing.

Magwood does not point to any evidence in the record to support such a claim, and this court finds none. <u>Sell</u>

clearly permits involuntary medication when certain conditions are met, and Magwood produces no evidence to suggest that such conditions were not met in his case. In fact, he produces no evidence of <u>involuntary</u> medication in the first place.

Moreover, to the extent Magwood argues that his competence at resentencing was "[f]abricated" by his medication, Pet. Br. at 69, he has also failed to establish that there was a "bona fide doubt" as to his competency during resentencing. <u>Watts v. Singletary</u>, 87 F.3d 1282, 1287 (11th Cir. 1996); <u>see also</u> <u>id</u>. at 1290 ("Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner." (internal brackets and quotation marks omitted)). Accordingly, the court rejects Magwood's involuntary-medication claim.

### F. Ineffective Assistance of Counsel

This court now turns to Magwood's claim that his counsel at the 1986 resentencing was ineffective in violation of the Sixth Amendment.  Magwood argues that his counsel, J. L. Chestnut, was deficient in a variety of ways.  First, he argues that his attorney failed to investigate and present important mitigating evidence at the resentencing.  Second, he argues that his attorney should have argued that the state court could not sentence him to death on the basis of a non-statutory aggravating factor.  Third, he argues that his attorney should have argued that the retroactive application of <u>Ex parte Kyzer</u> violated the Constitution.

In considering Magwood's claim, the court is mindful of the strict standards governing a determination of the ineffectiveness of counsel, particularly on habeas review of a state-court decision.  It is certain that "[a]n accused is entitled to be assisted by an attorney,

whether retained or appointed, who plays the role necessary to ensure that the trial is fair." <u>Strickland v. Washington</u>, 466 U.S. 668, 685 (1984).  It is also true that counsel's role in a capital sentencing is to "ensure that the adversarial testing process works to produce a just result under the standards governing decision." <u>Id.</u> at 687.  However, this court's review of counsel's performance is strictly constrained.  The Eleventh Circuit Court of Appeals has repeatedly held that, in the context of ineffective assistance of counsel, "the cases in which habeas petitioners can properly prevail ... are few and far between."  <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)).

There are two factors that come into play in determining ineffectiveness. First, in order for counsel to be ineffective within the meaning of the Constitution, counsel's performance must not be "reasonable[] under

prevailing professional norms," <u>Strickland</u>, 466 U.S. at 688, within the "'wide range of reasonable professional assistance.'" <u>Chandler</u>, 218 F.3d at 1313 n.12 (quoting <u>Waters</u>, 46 F.3d at 1518).   The United States Supreme Court and the Eleventh Circuit have, in particular, stressed that counsel's performance need not be flawless, and that factors such as resource and time constraints must be taken into account in evaluating counsel's performance. <u>Id</u>. at 1314 n.14.   Further, the court may not deem counsel's performance ineffective because it would have chosen a different strategy at trial; the court must defer to counsel's strategic decisions.   <u>Id</u>. The petitioner bears the burden of proving that "counsel's challenged action was not sound strategy," and counsel's competence is presumed.   <u>Id</u>. at 1315 n.15.

Second, the petitioner must demonstrate that by his counsel's failure to employ a reasonable strategy, he was "deprive[d] of a fair trial, a trial whose result is reliable," <u>Strickland</u>, 466 U.S. at 687.   Ordinarily, the

petitioner must show a reasonable probability that, but for errors of counsel, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding.  Id. at 694.

The state court found that Magwood's counsel was adequate; as with every other claim, this court may overturn that conclusion only if it is a contrary to, or an unreasonable application of, federal law established by the United States Supreme Court, or if it was based on an unreasonable determination of facts in light of the evidence presented to the state court.  28 U.S.C. § 2254.

With these standards in mind, this court turns to the substance of Magwood's ineffective-assistance claim. This court finds that, as to Magwood's arguments that counsel should have further investigated and presented evidence of his schizophrenia and that counsel should have argued that the trial court employed a non-statutory factor, the state court's determinations were not

93

unreasonable. However, the state court did make one unreasonable determination as to ineffectiveness of counsel: the finding that Magwood's counsel was adequate, although he misstated the federal law of due process.

### 1. Failure to Investigate and Present Mitigating Evidence

Magwood argues that his counsel unreasonably failed to investigate and present evidence of mitigating circumstances. Specifically, he argues that his counsel did not discover "the most direct and convincing" evidence of his mental illness, such as that of psychological trauma sustained during Magwood's service in Vietnam and letters to the Veterans Administration, or other evidence that would have demonstrated his paranoid schizophrenia.

While presentation of this evidence might have been helpful to Magwood, the Court of Criminal Appeals found that it would have been cumulative, 689 So.2d at 967, and that not presenting it was therefore reasonable. This

94

court cannot say that the Court of Criminal Appeals was incorrect.

As the Eleventh Circuit stated in <u>Marquard v. Secretary for Department of Corrections</u>, 429 F.3d 1278, 1307 (11th Cir. 2005), "counsel is not required to present cumulative evidence."  <u>See also</u> <u>Van Poyck v. Dept. of Corrections</u>, 290 F.3d 1318, 1324 n. 7 (11th Cir. 2002) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.").  In <u>Maquard</u>, the petitioner argued that counsel should have presented the testimony of members of his family to the effect that he was abused as a child and that he had a history of drug use.  Both the state court and the Eleventh Circuit found that counsel's presentation of the testimony of a licensed psychologist noting these factors was adequate.  In Magwood's case, the evidence would have contributed even less to his cause: it would have added little to evidence presented

at Magwood's original sentencing which included the
unanimous opinion and testimony of the members of the
Lunacy Commission confirming that Magwood "is a
schizophrenic." As one member of the commission stated,
Magwood "'would be crazy'" anywhere, and "'is not in the
borderline category.'" <u>Magwood v. Smith</u>, 608 F.Supp. at
226-27. The evidence might have provided different
sources for the conclusion that Magwood suffered from
schizophrenia, but would still only have been cumulative,
as it would have presented nothing that had not been
covered by other testimony.

As to Magwood's contention that counsel's
investigation of mitigating evidence regarding his
insanity was unreasonable, while it is true that there is
a duty to conduct a reasonable investigation, <u>Wiggins v.
Smith</u>, 539 U.S. 510 (2003); <u>Weidner v. Wainwright</u>, 708
F.3d 614 (11th Cir. 1983), counsel is not ineffective for
failing to conduct more than a reasonable investigation.
The key is whether "reasonable professional judgments

support the limitations on investigation." Wiggins, 539
U.S. at 534 (internal citations omitted).   Counsel's
decision not to investigate further cannot be called
unreasonable.  In Wiggins, counsel failed to investigate
and present any evidence at all of petitioner's horrifying
childhood including his history of having been sexually
abused.   Here, given that overwhelming evidence of
Magwood's schizophrenia had been presented and considered
by the trial court, the lack of further investigation into
his schizophrenia was not unreasonable.

## 2. Failure to Argue that the
## Aggravating Factor Was Non-Statutory

Magwood next contends that his counsel was ineffective
for failing to argue that the aggravating factor employed
in his case was non-statutory, and could not, therefore,
have been employed, under state law, in sentencing Magwood
to death.  This claim is without merit.  As this court has
stated, the Alabama Supreme Court determined in Ex parte
Kyzer that the defendant's aggravated offense in § 13-11-2

was a statutory aggravating factor.  Thus, the argument
that the death sentence based on an aggravating factor
found in § 13-11-2 was not based on a statutory factor was
bound to be unavailing under state law.  It could not have
been unreasonable for counsel not to have made an such an
argument; petitioner also could not show prejudice from
such a failure, given that the argument is without merit.

### 3. Failure to Argue that the Retroactive Application of _Ex parte Kyzer_ Violated Due Process

Finally, Magwood argues that his counsel was
ineffective because he failed to argue to the sentencing
court that the retroactive application of _Kyzer_ to his
case was a violation of the due process clause.  This
court agrees.

As previously discussed, the state trial court
violated the fair-warning component of the due process
clause by retroactively applying _Ex parte Kyzer_, 399 So.2d
330 (Ala. 1981), to his case.  Prior to _Kyzer_, and at the

time of Magwood's offense, a capital defendant could not be sentenced to death unless the court found the existence of at least one statutory aggravating circumstance as enumerated in former 1975 Ala. Code § 13-11-6.  <u>Kyzer</u> reinterpreted the state statute to allow a death sentence based on a finding that the aggravated offense under § 13-11-2, standing alone and without any aggravating circumstances under § 13-11-6, outweighed all mitigating circumstances that might exist.  But, as stated, because <u>Kyzer</u> was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 354 (1964), (internal quotation marks omitted), <u>quoted in</u> <u>Rogers v. Tennessee</u>, 532 U.S. 451, 461 (2001), it could not, consistently with due process, be retroactively applied to Magwood's case.

At the resentencing hearing, however, Magwood's counsel stated that the court could sentence Magwood to death without finding an aggravating circumstance in

former 1975 Ala. Code § 13-11-6.  Defense counsel stated as follows: "We say to Your Honor, as we did in some proposed findings that we submitted to you, that the capital offense itself is an aggravating circumstance and that this Court has every right to consider it as an aggravating circumstance."  R. Tab 1 at R-17 to -18.  The court must now determine whether this statement by defense counsel, and his concomitant failure to argue that using the capital offense itself as an aggravating circumstance would violate due process, constituted ineffective assistance of counsel.

The court begins with the first inquiry under Strickland, whether counsel's performance was deficient. Under Strickland, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  466 U.S. at 689 (internal

quotation marks omitted); see also Chandler, 218 F.3d at 1314.  However, while courts generally defer to strategic decisions, the Eleventh Circuit Court of Appeals has held that counsel's "choice of tactic must be reasonable under the circumstances," and that misstating the law is not a reasonable trial strategy.  Cave v. Singletary, 971 F.3d 1513, 1518 (11th Cir. 1992).

Here, by expressly stating that the trial court could sentence Magwood to death using the aggravated offense of which he was convicted under § 13-11-2 as the sole aggravating circumstance justifying the death penalty, defense counsel misstated the law as it was clearly established by United States Supreme Court precedent in Bouie.  This court suspects that defense counsel was not aware that Magwood had a meritorious fair-warning claim.  However, even assuming for the sake of argument that counsel's statement was a strategic decision,[12] such a

_____

        12. Whether it was a strategic decision or an oversight does not affect this court's evaluation of counsel's performance.

101

strategy was an unreasonable one because it misstated the law to Magwood's detriment.

The court wishes to stress that defense counsel's failure was not only in failing to argue that Magwood was, under Bouie, ineligible for the death penalty unless an aggravating circumstance enumerated in § 13-11-6 was found; rather, he affirmatively stated to the court, and submitted as part of his proposed findings, that Magwood could be sentenced to death on the basis of the § 13-11-2 aggravated offense alone.  That is, counsel did not simply make an error of omission--an error that would be highly unfortunate but would perhaps survive the strong presumption that it was a strategic decision; rather, counsel affirmatively argued a position that was detrimental to his client and a clear misstatement of federal constitutional law.  Under Cave, this is enough to overcome the strong presumption that, even if this could be considered defense counsel's "strategy," such strategy

was not reasonable, and Magwood's representation was seriously deficient.

In _Cave_, the petitioner's attorney essentially conceded that the State had proven its case as to guilt. 971 F.2d at 1517. Defense counsel appeared not to understand that her client could be convicted of felony murder if he participated in a robbery, and so argued to the jury that, although he committed the robbery, he was not guilty of felony murder. _Id_. at 1518. On habeas review, the Eleventh Circuit was convinced that Cave's attorney simply did not understand the law, but assumed, for the sake of argument, that she had made a strategic decision to misstate the law. _Id_. Although in Magwood's case, the incorrect admission concerned eligibility for the death penalty rather than guilt of the crime, and the argument was made to the judge rather than the jury, the underlying principle is the same as the one in _Cave_: an attorney's strategy (assuming that it is a strategy) to mislead the decisionmaker on a matter of law is not a

103

reasonable strategic decision. In particular, a misstatement of law that works to the client's detriment is clearly unreasonable as a matter of professional conduct.

The court now proceeds to the second inquiry under Strickland, whether counsel's unreasonably deficient performance prejudiced the defense. It is clear that Magwood was prejudiced by his counsel's misunderstanding and affirmative misstatement of the law. As stated, Magwood had a due-process right, under Bouie, not to be sentenced to death absent the court finding at least one aggravating circumstance as enumerated in § 13-11-6. The sentencing court found no such aggravating circumstance but sentenced Magwood to death nonetheless. Thus, if counsel had been able to argue successfully that a death sentence violated the fair-warning principle of the due process clause, the outcome of the case would surely have been different.

While this court is aware that outcome determination does not constitute prejudice without attendant unfairness, <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), here there is undoubtedly unfairness and "depriv[ation] of the defendant of a[] substantive or procedural right to which the law entitles him." 506 U.S. at 364.  Here, as stated, Magwood was deprived of the right to fair warning that his conduct could subject him to the death penalty. Accordingly, Magwood has established that he was prejudiced by his attorney's deficient performance at resentencing.

The court now addresses whether the state court was unreasonable in rejecting Magwood's ineffectiveness claim. 28 U.S.C. § 2254.  First, because the state appellate courts did not find that the trial court committed constitutional error under <u>Bouie</u> in retroactively applying <u>Kyzer</u> to Magwood's case, it is unsurprising that they also did not find that Magwood's counsel was ineffective for effectively conceding that such retroactive application of

Kyzer was permissible.   This court's conclusion that defense counsel was ineffective is based, in part, on its conclusion that the retroactive application of Kyzer contravened due process.   Had the state court correctly concluded that Magwood's sentence violated the fair-warning principle of the due process clause, it might well have reasonably concluded that Magwood's counsel was ineffective for misstating the law as to that issue at the resentencing hearing.

The state court appears to have had no occasion to consider the Bouie retroactivity issue, however, as it reasoned, instead, that the federal court in its first grant of habeas relief, Magwood v. Smith, 608 F.Supp. 218, 225 (M.D. Ala. 1985) (Hobbs, C.J.), aff'd, 791 F.2d 1438 (11th Cir. 1986), imposed no obligation on the sentencing court other than finding the two mitigating circumstances. Magwood v. State, 689 So. 2d 959, 967 (Ala. Cr. App. 1996) ("[T]he appellant's complaints that his attorney ... failed to challenge the trial court's consideration of a

nonstatutory aggravating circumstance were matters outside the direction of what was to be considered by the resentencing court."). It is not clear how the Alabama court's reasoning fits into the two-pronged performance-and-prejudice scheme that the United States Supreme Court has set forth for the evaluation of the ineffectiveness of counsel in death cases. See Strickland, 466 U.S. at 687. However, whether the Alabama court meant that it was not unreasonable professional behavior to decline to challenge an aggravating factor under these circumstances, or whether the Alabama court meant that no prejudice was caused, the court's holding was unreasonable.

The Alabama court's implied holding is that counsel's behavior was not ineffective because, essentially, the lawyer had no substantive role in the resentencing. This conclusion is unreasonable, whether it is regarded as a legal issue or a factual issue. This holding is not consistent with the legal requirements, clearly established by the United States Supreme Court, that

individualized consideration of the aggravating and
mitigating factors is required, <u>Zant v. Stephens</u>, 462 U.S.
862, 879 (1983).  It is also not consistent, factually,
with what actually happened in the trial court.  The trial
court at resentencing conducted--and specifically,
repeatedly and emphatically said that it was conducting--
an independent and full finding and reweighing of the
aggravating and mitigating circumstances.  R. Tab 1 at R-
25 ("This Court conducted a new sentencing hearing and
offered the parties the opportunity to submit evidence,
argument and briefs ... The present judgment and sentence
has been the result of a complete and new assessment of
all of the evidence, arguments of counsel, and law."); <u>id</u>.
at R-27 ("The Circuit Court as stated has given the oral
testimony and documents a complete and new assessment.").
The Court of Criminal Appeals acknowledged that the trial
court did so, <u>Magwood v. State</u>, 548 So.2d 512, 514 (Ala.
Cr. App. 1988), and it is clear from the record that the
trial court also independently found mitigating and

aggravating circumstances. R. Tab 1 at R-27. Given the fact that the sentencing court conducted a "complete and new assessment" of the aggravating circumstances, mitigating circumstances, arguments of counsel, and law, it cannot be reasonably concluded either that counsel's performance was adequate under the circumstances or that counsel's error resulted in no prejudice to Magwood's case.

Thus, the Alabama court's finding that counsel's performance was adequate because this court only ordered a resentencing court to find the mitigating circumstances is unreasonable whether as a matter of clearly established law set forth by the United States Supreme Court or as a matter of fact, that is, as a matter of what actually happened.

Accordingly, the court finds that the state courts' rejection of Magwood's ineffectiveness claim was unreasonable and that habeas relief is due to be granted.

109

## IV. CONCLUSION

For the foregoing reasons, this court will grant Magwood's habeas petition on his fair-warning and ineffective-assistance claims and deny it on the other claims. The murder of Sheriff Grantham was undeniably a horrific event; it was a terrible crime against the Sheriff, his family, and the citizenry at large. However, the fundamental requirements of due process and the right to counsel apply even to those convicted of the most serious crimes. The court cannot ignore that due process and the right to effective assistance of counsel were denied in Magwood's case, which is why his death sentence must be vacated.

An appropriate judgment will be entered.

DONE, this the 9th day of April, 2007.

      /s/ Myron H. Thompson      
UNITED STATES DISTRICT JUDGE